GEORGE BARCLAY AND JAMES BRUMMETT v. THE UNITED STATES OF AMERICA.

(Filed July 16, 1902.)

1. **LARCENY—What Constitutes—Public Offense.** Where one steals property in the Indian Territory and carries it into the Osage Indian reservation in Oklahoma, such act constitutes a public offense under the laws of the Territory of Oklahoma, but does not constitute larceny as defined by the laws of the United States.

2. **JURISDICTION—United States Courts—Common Law Offense.** There are no common law offenses under the laws of the United States, and the courts of the United States do not exercise any common law jurisdiction, except where conferred by act of congress, and it is not a crime against the laws of the United States to steal property in one of the states or territories and bring it into a place within the exclusive jurisdiction of the United States.

3. **LARCENY—Defined.** The stealing of property in the Indian Territory and bringing it into this territory is larceny in this territory. Every moment's possession by the thief is a continuance of the trespass, and amounts in legal contemplation to a new caption and asportation.

4. **ARREST BY PRIVATE PERSON—Warrant.** A private person may arrest another for a public offense committed or attempted in his presence, and when such party is in the actual commission of an offense, he may be arrested without a warrant, and without being first informed of the cause thereof.

5. **LARCENY—Continuance of Offense.** One who has stolen the property of another, is in the commission of such offense at every place and so long as he remains in possession of the stolen property.

6. **SAME—Place of Commission—Laws Governing.** If property is taken and appropriated in a foreign state or country, under such circumstances as would constitute larceny in this territory if the act had been consummated here, and the property is brought into this territory by the thief, the crime is the same as larceny of such property within this territory, and the question of the larceny in such foreign place is to be determined by the laws of this territory, and not by the laws of the place where the property was originally stolen.

7. **MURDER—Jurisdiction.** Murder when committed within the Osage Indian reservation by a white person, is punishable under the laws of the United States and by the United States courts.

8. **INSTRUCTION—Error, When.** An instruction to the jury, although erroneous, is not reversible error, unless it might have misled or confused the jury to the prejudice of the complaining party.

(Syllabus by the court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

*C. A. Chasteen* and *James P. Neal,* for plaintiffs in error.

*Horace Speed, United States Attorney,* and *J. W. Scothorn* and *B. S. McGuire, Assistant United States Attorneys,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiffs in error, George Barclay and James Brummet, were jointly indicted, tried and convicted for the crime of murder committed in the Osage Indian reservation, and sentenced to be hanged. They have filed a joint petition in error in this court.

It appears from the record that on the Fourth of July,

1900, J. I. Poole was residing in the Cherokee nation in the Indian Territory, and on that day he went with his family to a celebration some few miles from his home. During their absence his dwelling house was entered, and there was stolen from him two blankets, a pair of pants, a bridle and razor. He returned to his home in the evening between six and seven o'clock, and found that his house had been entered, and drawers, doors and cupboards opened, and their contents scattered about. He missed the stolen articles, and as it was near night, he waited until the next morning, and then procured some of his neighbors and started in pursuit of the thieves, and to recover the property. They traveled on into the Osage nation, and on the night of the seventh the party stopped at the home of John Harlow, in the Osage country, in Oklahoma. On the morning of the eighth, while feeding their horses and assisting Mr. Harlow, whose wife was sick, in getting breakfast and doing the chores, Barclay, Brummet and a companion called Kennedy, rode up to the barn lot and inquired if they could get breakfast. They were directed to go to the house and ask Mr. Harlow, which they did, and were informed that they could have breakfast. While breakfast was being prepared, Mr. Poole recognized his stolen pants on one of these parties, and his blankets and his bridle, and a stolen saddle in their possession. Poole and his party had left their arms at the house and Brummet, Barclay and Kennedy were all armed. While they were getting ready for breakfast, Poole notified his friends that his property was in the possession of the new comers, and it was then arranged that one of Poole's party, Jesse Spencer, should eat breakfast with the three new arrivals, and while they were sitting at the breakfast table, Poole and his two companions, Clay and Dunlap, would arrest the party. The eating table was under an arbor a few feet south of the

dwelling house, and a short distance east of a small smoke house used for cooking purposes. When breakfast was ready, Spencer and Barclay took seats on the north side of the table facing south, Brummet sat on the south side facing north, and Kennedy was seated at the east side facing west. Poole was in the main dwelling house north of the table; his Winchester rifle was standing against the south side of the room near the door; Dunlap was in the cook house assisting in the cooking, and armed with a 32 calibre revolver. Clay was in the main building, and had a double-barrel shot gun. Mr. Harlow was in the house with his wife and heard all that transpired, but saw none of it. When the parties were seated at the table as before stated, Mr. Poole stepped from inside the dwelling house into the south door, facing the table and said: "Throw up your hands, consider yourselves under arrest," and he immediately stepped out and picked up the gun standing against the house. Dunlap stepped to the door of the cook house with his revolver drawn on the parties, and Clay threw down his shot gun on Barclay. Immediately on Poole's demand being heard, Spencer, Barclay and Kennedy rose from the table and threw up their hands. Brummet did not rise or throw up his hands, but attempted to draw his revolver, which caught on the chair or his clothes and Poole rushed at him and clubbed his rifle and struck him; he dodged away from the table and got his revolver out and Poole struck it from his hands with his rifle. In the meantime Barclay had dodged away and got back of the cook house; he then drew his revolver and turned and holding it in both hands shot and killed Poole, who was still trying to subdue Brummet. Spencer then shot at Barclay and struck him on the leg, making a slight skin wound. Barclay then threw up his hands and surrendered. Dunlap had his gun drawn on Barclay during the excitement, but when

Brummet and Poole were scuffling, they came between Barclay and Dunlap, and Barclay quickly jumped behind the corner of the cook house; Dunlap snapped the gun at him, but it failed to discharge. There was some evidence to the effect that three shots were fired, but Mr. Harlow who was in the house, is positive that only two were fired, and Barclay admits firing one of these, and Spencer the other, and no one else was seen to fire a shot.

Poole, Spencer, Dunlap and Clay were all residents of the Cherokee nation in the Indian Territory, and were hunting for the parties who had stolen Poole's property, with the purpose of apprehending them.

Barclay, Brummet and Kennedy had got together at Galena, Kansas, about two weeks previous to the homicide, and had been traveling together through parts of Kansas, Indian Territory and Oklahoma. Brummet had stolen the horse and saddle he was riding. Kennedy, whose real name was Ben Howe, was an escaped convict from the Kansas penitentiary. Brummet had served a term in the penitentiary for horse stealing, and the party had stolen the property of Poole, and had it in their possession when arrested. Barclay and Brummet were indicted in the district court of Pawnee county on the federal side of the court for the murder of Poole. Both were convicted and sentenced to be hanged.

The Osage nation, where the homicide occurred, was at the time attached to Pawnee county for judicial purposes.

The theory of the prosecution on the trial of the cause, was that the prisoners had stolen Poole's property in the Cherokee country and brought it into Oklahoma, which under

the laws of the territory constitutes larceny in Oklahoma; that the stolen property was in their possession at the time of the arrest, and that the parties making the arrest, although not officers, were authorized to make the arrest, and that the killing of Poole in resisting arrest constituted murder.

The defense relied upon the theory that they were being arrested for a past crime, which was under a misdemeanor, the value of the property taken being less than twenty-five dollars, and that they could not arrest the prisoners without a warrant, and that as they were not officers, had no warrant, and as the offense was not being committed in the presence of the persons attempting the arrest, that the defendants had the right to resist such unlawful arrest, even to the taking of life. The trial court adopted the theory of the prosecution, and the instructions to the jury were in harmony with that theory.

Counsel for plaintiffs in error contend that no crime had been committed in Oklalhoma for which an arrest was authorized. We think the law is otherwise.

Sec. 2384, Stat. 1893, provides:

"Every person who steals the property of another in any other state or country, and brings the same into this territory, may be convicted and punished in the same manner as if such larceny had been committed in this territory, and such larceny may be charged to have been committed in any town or city into or through which such stolen property has been brought."

But, it is contended that this section is not applicable to the Osage nation, because it is an Indian reservation, the title to which is yet in the Indian tribe, and that it is only such offenses as are punishable under the laws of the United

States that the courts have jurisdiction of. In support of this position we are cited the case of *Goodson v. The United States,* 7 Okla. 117. In the Goodson case this court expressly held that "The legislature may make any act criminal when committed on an Indian reservation which act is not punishable as a crime under the laws of the United States, and the territorial courts will have jurisdiction of such offenses. But, in so far as the territorial laws attempt to punish the same acts made criminal by the laws of congress when committed within an Indian reservation, such laws are inconsistant with the laws of the United States, and within the inhibited powers of the legislature."

Now, unless the act of bringing stolen property into the Osage nation is a crime under the laws of the United States, then the territorial statute making such act a crime is applicable to the reservation.

By the common law, prior to its modification by act of parliament, where a thief stole property in one county of the kingdom and carried it into another county, he might be prosecuted in any county into which he carried the stolen property, but if he stole it within the king's dominions where the common law did not prevail, and carried it into a county of the kingdom, he could not be prosecuted in the place to which he carried the stolen property.

The federal courts hold that there are no common law crimes under the laws of the United States; that all crimes the punishment and the procedure, are statutory; the whole criminal jurisdiction of the courts of the United States being derived from acts of congress. (*United States v. Hudson,* 7, Cranch, 32; *United States v. Britton,* 108 U. S. 199; *Jones v. United States,* 137 U. S. 202.)

It is also expressly held that the United States courts have no jurisdiction to punish a thief who steals property in one of the states and carries it into a place over which the United States exercises exclusive jurisdiction. (*Rogers v. United States,* 46 Fed. 1.)

We find no statute of the United States making it a crime to carry stolen property from the Indian Territory or any other part of the United States, into an Indian reservation; hence, we conclude that the acts of the defendants in stealing Poole's property in the Cherokee nation and carrying it into the Osage nation was not an act punishable by the United States courts having jurisdiction to punish crimes in such reservation. Then, if it was not a crime against the United States, it was a crime against the laws of Oklahoma, and came within the terms of section 2384, Okla. Stat. *supra.*

The next proposition is: Were Poole and his assistants authorized to make the arrest?

Sec. 4990, Stat. Okla. 1893, provides: "A private person may arrest another; First: For a public offense committed or attempted in his presence."

Were Barclay and Brummet in the act of committing a public offense in the presence of Poole and party? The law answers Yes. Mr. Bishop, in his Directions and Forms in Criminal Causes, sec. 607, says:

"Since larceny consists of any asportation of the goods of another through trespass by one who simultaneously means to steal them, the complete offense is committed in every locality in which such asportation, trespass and intent to steal concurs. So that some goods may thus be stolen successively by the

same person, in as many countries, states and counties as he can convey them into or through."

In the case of *The People v. Burke,* 11 Wendell, 129, the supreme court of New York said, in construing a statute like ours:

"In this respect the statute recognizes the common law by which the possession of stolen property in contemplation of law remains in the owner, and the theif, therefore, is guilty of theft in every place into which he carries the stolen goods. Such has always been the common law in relation to different counties; it is a principle, also, of the common law, that every offender shall be punished in the county wherein the offense was committed, but in respect to stolen goods, the offender may be punished in any county where he carries the stolen goods, as he is guilty of stealing them in every place where he has them."

The supreme court of Alabama, in the case of *State v. Seay,* reported in 20 Am. Dec. 66, in discussing a similar statute, said:

"Hence it appears that the bringing of the stolen property here was to be considered a new asportation in whatever county the thief might be found with it in his possession, and that the indictment should be drawn for a larceny committed against the peace and dignity of this state, locating the taking and asportation in the county where the indictment is found. The language of the act is too plain to authorize any other interpretation, and this conclusion gains strength from the fact that when property is stolen in one county and the theif is found with it in his possession in another, he may be indicted and found guilty in the latter, because in any county in which the property is found with him, there is a new taking."

In the case of *State v. Matthews,* 2 S. W. 793, the supreme court of Tennessee states the same proposition, thus:

"The act proceeds upon the well understood principle that the continued possession of stolen property *animo furandi,* is, at every step a new caption and asportation. This view has always been held at common law, and that, therefore, the stealing of property in one county of the state and taking it into another, was larceny in the latter county. Every moment's possession by the thief is a continuance of the trespass, and amounts in legal contemplation to a new caption and asportation."

This court announces the same doctrine in *Keith v. Territory,* 8 Okla. 306, and the authorities are abundant and harmonious on this question. We have only cited a few of the older and leading cases. While the plaintiffs in error were in possession of the property stolen by them in the Indian Territory, they were at each step in the commission of a new offense, and were committing .larceny at the very moment they were arrested, and at the time Poole lost his life in attempting their arrest.

The further contention is made that it was not shown on the trial that the taking of the property of Poole was any criminal offense in the Indian territory, or that it was not shown that the taking of the property constituted stealing or larceny at the place where it was first taken. We do not regard this question as of any importance.

It is well settled by the great weight of authority that we do not look to the law of the place from which the property was brought, nor to the common law, to determine the question of the larceny, but to our own statutes. We do not seek to punish for crime committed in the Indian territory, but for a new offense committed in the Osage nation, in Oklahoma territory, and against the laws of Oklahoma. The question

as to whether the original taking constituted larceny, is to be determined by our own laws, and not by the laws of the place where the property was first taken. This principle is settled by the following authorities: *People v. Burke,* 11 Wend. 129; *Murray v. State,* 18 Ala. 731; *People v. Staples,* 91 Cal. 23; *State v. Underwood,* 49 Me. 181; *Worthington v. State,* 58 Md. 403; *State v. Knief,* 12 Mont. 92, 29 Pac. 654, 15 L. R. A. 722; *Hemmaker v. State,* 12 Mo. 454; *State v. Butler,* 67 Mo. 61.

The courts of the states of Ohio, Texas and Massachusetts have held to a different rule; but they are not sustained by the weight of authority.

The question as to whether the taking of Poole's property in the Indian territory by the plaintiffs in error, constituted a crime, was determined by the laws of Oklahoma, and not by the laws of the Indian Territory, and as they were found in possession of the stolen property at the time of their arrest, it was immaterial whether the crime they had committed was grand or petit larceny; in either case it was a public offense under our laws, and they were liable to arrest and punishment for such offense. Poole and his assistants who were on the hunt for the thieves who had taken his property, had the right, under our laws, to arrest the thieves wherever they might be found with the stolen property.

Applying the foregoing rules to the cause under consideration, it appears that the trial court properly interpreted and applied the law.

Instruction No. 7, given by the court, is complained of. It is as follows:

—33

"If you believe from the evidence beyond a reasonable doubt, that the defendants or either of them committed the theft of the personal goods and chattels of the said J. I. Poole in the Indian Territory, and that the said defendants brought said goods and chattels into Oklahoma Territory, and that immediately after the taking of said goods by the said defendants, the said Poole and his companions pursued the said defendants from the home of said Poole in the Indian Territory into the Osage Indian reservation, and that the said Poole and his companions in pursuit of said defendants had overtaken the said defendants and found them in the possession of the stolen property of the said Poole, then in that event the said Poole and his companions were authorized to arrest said defendants, although they had no warrant or legal process for that purpose."

This instruction clearly and explicitly states the law as applicable to the evidence in the case. It submits to the jury to be found from the evidence beyond a reasonable doubt, all the propositions upon which the conclusion is based. It assumes nothing, but submits the entire question to the jury as to whether the conditions existed which would justify Poole and his party in attempting to arrest the defendants. We think the instruction fair and impartial, and not open to any objections.

The defendants on the trial requested the following instruction:

"In order to justify the deceased and his companions in making the arrest of defendants for having committed a felony on an occasion already past, it must be proved that a felony was actually committed in this territory, and that there was reasonable grounds for suspecting these defendants of committing said felony. A mere suspicion alone is not sufficient to justify an arrest; there must be specific circumstances con-

necting these defendants with the act. There must be a clear cut belief founded upon and arising from definite facts and strong reason. A mere honest belief is not sufficient to justify a private person in making an arrest for a past felony, and the facts must be such as would warrant a cautious person in coming to the conclusion that the person arrested is the real offender, and these facts must be known to the person making the arrest at the time."

This request was made upon the theory that the defendants were being arrested for a felony committed in the Indian Territory, and not for the commission of an offense being then committed in Oklahoma. The court gave the instruction after modifying it so that read as follows:

"In order to justify the deceased and his companions in making the arrest of the defendants for having committed a felony on an occasion already past, it must be proved beyond a reasonable doubt that the defendants were still in the commission of a public offense in this territory, and that there was reasonable ground for believing these defendants committed said offense. A mere suspicion alone is not sufficient to justify an arrest; there must be specific circumstances connecting these defendants with the act. There must be a clear cut belief founded upon and rising from definite facts and strong reason. A mere honest belief is not sufficient to justify a private person in making an arrest for such an offense, and these facts must be such as would warrant a cautious person in coming to the conclusion that the person arrested is the real offender, and these facts must be known to the person making the arrest at the time."

The defendants complain of striking out the word "felony" and inserting "public offense." The modification made the instruction conform to the language of our statute. The instruction was evidently requested upon the theory that private persons can only make arrests for felonies, but such is

not our law.   These defendants were at the time in the commission of the crime of petit larceny, a public offense, for which any person without a warrant might legally arrest them, who knew of such fact, while in the commission of such offense.   They had evidently stolen Poole's property, and had it in their possession when they went to the place of the homicide.   Poole saw and recognized his property, and attempted to arrest them and lost his life at the hands of the thieves. They evidently knew that they were being arrested for some of their numerous crimes, and made no pretense or claim that Poole and his party intended them any violence.   It was clearly apparent from all the facts that their purpose was to escape arrest, and as Barclay said after shooting Poole, "his companions had called him a coward so much that he thought he would come back and stay with them and pick him off." Their conduct at the time is convincing that their effort to avoid arrest was a premeditated attempt to escape at all hazards, even to the taking of human life.   The instruction is not subject to the objection urged against it, and is as favorable to the defendants as they were entitled to under the evidence in the case.

Instruction No. 27 is also objected to.   It is as follows:

"You are instructed that a public offense is any act made punishable by the laws of the Territory of Oklahoma, and you are further instructed that the bringing of personal property stolen from the Indian Territory, into this territory, is a public offense and is made punishable under the laws of this territory."

There are some inaccuracies contained in this instruction which render it incorrect as an abstract proposition of law, yet when taken in connection with the evidence in the case and all

the other instructions, it could not have worked any prejudice to the defendants. The jury had been told in other instructions that unless they should find from the evidence beyond a reasonable doubt that the defendants stole Poole's property in the Indian Territory, and had it in their possession in Oklahoma, that Poole and his companions were without authority to make the arrest and they could lawfully resist such attempt. It was apparent that they were the thieves; one of them admitted it, and both the same as confessed it, and if they were the thieves, and there is no reasonable doubt on this question, then the error in the instruction was harmless, and the jury must have been satisfied beyond any reasonable doubt that they were the persons who stole the property from Poole's residence in the Cherokee nation. An instruction, although erroneous, is not reversible error unless it might have misled the jury to the prejudice of the party complaining.

The defendants requested a number of instructions, which were refused. We have examined all these refused requests, in connection with the instructions given, and the principles embraced in them are either embodied in the instructions given, or they fail to properly state the law, and hence were properly refused.

The record discloses the fact that great latitude was shown the defendants in the trial of the cause; the whole proceedings were controlled by fairness and liberality. The defendants were ably defended; had all the time requested to procure their witnesses; the court delayed the trial to enable them to get their testimony; there is no appearance of prejudice on the part of the jury. The killing of Poole while in the pursuit of his property and in the lawful exercise of his rights

as an American citizen was an unnecessary and unwarranted deed. Brummet was the first to refuse to obey the lawful commands of Poole and immediately pulled his revolver, and was endeavoring to use the gun on Poole; he was knocked down; Poole made no effort to shoot him, but was only trying to subdue and capture him. Barclay took advantage of the scuffle and got away, but at once returned and killed Poole, while Brummet was attempting to make use of his gun. No shot was fired by the arresting party until after Poole was killed, and then only one to force Barclay to surrender. The jury found the facts against the defendants; there is evidence to support the verdict, and this court cannot reverse the case on the weight of the evidence. The sentence is the most severe known to the law, but the crime committed was an unprovoked and desperate murder. The jury which tried the case are to be commended for their willingness to enforce such penalties as will put a restraint on the commission of such crimes.

We find no error in the record. The judgment of the district court of Pawnee county is affirmed, and said cause is remanded to said court, with directions to bring the prisoners before it and fix a day for the execution of the judgment.

Hainer, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.