# BROWN *v.* UNITED STATES.*

APPEAL AND ERROR; CRIMINAL LAW; EVIDENCE; CONFESSIONS; LARCENY; STARE DECISIS; COURTS.

1. Where in a criminal prosecution for larceny from a railroad company, a corporation, the question was not raised in the lower court whether the accused could be legally convicted in the absence of proof by the prosecution of the incorporation of the company, that question will not be considered on an appeal by the accused from a judgment of conviction.

2. A confession by one charged with the commission of a crime will not be held to have been involuntary merely because the accused was

---

*Evidence—Confessions.*—For authorities on the question of voluntary confessions see exhaustive note to *Ammons* v. *State,* 18 L.R.A.(N.S.) 768.

under arrest in a police station, surrounded by officers, when he made it. (Distinguishing *Davis* v. *United States,* 18 App. D. C. 468.)

3. An indictment for larceny will not lie in this District against one who stole goods in a State and brought them here. (Citing *Davis* v. *United States, supra.*)

4. This court is not bound by a decision of the former circuit court of the District of Columbia, if convinced of its unsoundness in principle, and if it did not establish a rule of property.

5. The courts of one country will not execute the penal laws of another; and this rule applies to the several States in their relations with each other and to the United States.

No. 2205.   Submitted October 7, 1910.   Decided November 1, 1910.

HEARING on an appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia in a prosecution for grand larceny.            *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment and sentence under an indictment for grand larceny. The indictment contains four counts, each stating separate articles of jewelry charged to have been taken by the defendant, George L. Brown, from the possession of the Southern Railway Company, and appropriated in the District of Columbia. The value of the items in each count exceeds $35, making the offense grand larceny in each. The evidence tended to show that the defendant was a baggage master of the Southern Railway Company, on a train which traversed the States of North Carolina and Virginia and ran into the District of Columbia. That trunks belonging to different persons had been delivered to the railway company at points on its line in Tennessee, North Carolina, and Mississippi, which were transported on said train. Some were checked to the city of Washington, but the greater number to other points in the State of Virginia and beyond the District of Columbia. That certain articles of jewelry, enumerated in the several counts, were removed from said trunks while *en route.* Some were found in possession of the defendant in the District of

Columbia, and others in the possession of persons to whom they had been given or pawned by the defendant. A confession of the defendant was also introduced, in which he stated that he was baggage master of the Southern Railway Company, and had, while *en route,* opened several trunks and removed the articles of jewelry, and that he had disposed of said articles.

No evidence was introduced in behalf of the defendant. At the close of the evidence for the United States the defendant asked the court to instruct the jury to return a verdict of not guilty, because the proof showed that the taking of the property had occurred in the State of North Carolina or Virginia, and not in the District of Columbia; therefore, as no offense had been committed in the District of Columbia, as charged in the indictment, the court had no jurisdiction of the offense. The motion was denied, to which the defendant excepted, and the case was submitted to the jury upon the evidence, with a charge to the effect that if the defendant had taken the property, and brought it into the District of Columbia, and there appropriated it, he was guilty of larceny under the laws of the District of Columbia, no matter where the property had been actually removed from the trunks. The defendant was found guilty, and sentenced to three years in the penitentiary. From this judgment he has appealed.

*Mr. Campbell Carrington* and *Mr. John Ridout* for the appellant.

*Mr. Clarence R. Wilson,* United States Attorney, for the District of Columbia, and *Mr. James M. Proctor,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first point made on behalf of the appellant is that it was error to refuse the direction for a verdict because there was

no proof of the incorporation of the Southern Railway Company, from whose possession as carrier the property was feloniously taken. The motion for a verdict was confined to the special ground heretofore stated. No suggestion was made of the want of the formal proof of incorporation. Assuming that formal proof was necessary, as alleged, and that the recital of the bill of exceptions is sufficient to show that it contained substantially all of the evidence introduced by the United States, we think that the question cannot be considered here, because evidently not raised below and incorporated in the bill of exceptions. *Tucker* v. *United States,* 151 U. S. 164–170, 38 L. ed. 112–115, 14ˢ Sup. Ct. Rep. 299. It is true that there are instances in which, where the question has not been specially raised, the court has exercised a discretion to examine the entire evidence, and ascertain if there has been a failure to prove a material element of the offense charged. *Wiborg* v. *United States,* 163 U. S. 632–659, 41 L. ed. 289–299, 16 Sup. Ct. Rep. 1127, 1197; *Clyatt* v. *United States,* 197 U. S. 207–221, 49 L. ed. 726–731, 25 Sup. Ct. Rep. 429; *Williamson* v. *United States,* 207 U. S. 425–453, 52 L. ed. 278–292, 28 Sup. Ct. Rep. 163; *Crawford* v. *United States,* 212 U S. 183–194, 53 L. ed. 465–470, 29 Sup. Ct. Rep. 260, 15 A. & E. Ann. Cas. 392.

The incorporation of the railway company was a formal element of the case, and did not constitute an element of the offense of larceny, and it would rather be an abuse, than an exercise, of discretion to reverse a judgment upon such a ground.

2. Error is assigned on exception taken to the evidence of the confession of the defendant. The statement was made ·in a talk between him and a special agent of the railway company while defendant was in the police station surrounded by officers. It does not appear from the brief recital that the agent asked defendant a question; on the other hand, it records the witness as saying: "Brown wanted to tell what he had done with the jewelry." A statement subscribed and sworn to by the defendant followed this oral confession, but none of the circumstances and conditions surrounding are given. It is recited, also, "that

no threats were made nor inducements offered to Brown." The contention resolves itself to this: that the confession was not voluntary because the defendant was in arrest and surrounded by police officers. The contention goes far beyond the doctrine of the cases relied on to support it: *Bram* v. *United States,* 168 U. S. 532–564, 42 L. ed. 568–580, 18 Sup. Ct. Rep. 183, 10 Am. Crim. Rep. 547; *Davis* v. *United States,* 18 App. D. C. 468–492; and is untenable.

3. The evidence tended to show that the several trunks in the possession of the carrier were wrongfully opened by the defendant in the State of North Carolina or the State of Virginia; that certain articles of jewely were taken therefrom with felonious intent, brought into the District of Columbia, and there converted to the takers use. Did the court err in charging the jury that the defendant might, under this evidence, be found guilty of larceny committed in the District of Columbia? Larceny by the common law consists in the wrongful taking and carrying away of the chattels of another with the felonious intent to convert them to the taker's own use. These are the necessary elements of the offense as defined in the Codes of the District, of Virginia, and of North Carolina. D. C. Code secs. 826, 827 [31 Stat. at L. 1324, chap. 854], Va. Code 1904, sec. 3707; N. C. Rev. Code 1908, Crimes, sec. 350. By the District Code, which includes also "things savoring of the realty, "if the value of the things taken be "$35 or upward," if the offense is grand larceny, punishable by confinement in the penitentiary for not less than one nor more than ten years. By the Virginia Code the value must be $50 or more to constitute grand larceny, which is punishable by confinement in the penitentiary for not less than five nor more than ten years. The Code of North Carolina abolishes all distinction between petit and grand larceny, and where no other punishment is especially prescribed for the particular act, it shall be punished as petit larceny, provided that "in cases of much aggravation of hardened offenders," the court may in its discretion sentence the offender to the State prison for a period of not exceeding ten years.

Whether one stealing goods in one State and carrying them

into another may be punished for larceny, as if committed in the latter, is a question that has been the subject of much controversy, resulting in conflicting decisions. It was early settled in England that one stealing goods in one county of the realm might be indicted for the larceny in any other county into which he may have carried the stolen goods, upon this principle: "That the possession of goods stolen by the thief is a larceny in every county into which he carries the goods, *because, the legal possession still remaining in the true owner,* every moment's continuance of the trespass and felony amounts, in legal consideration, to a new caption and asportation." 1 Archbold, Crim. Pl. 64 note; 2 East, P. C. 771, 772; 2 Russell, Crim. Law, 116. At the same time the English courts refused to extend the doctrine to cases where the goods had been taken upon the high seas or in Scotland and brought by the taker into England. *Butler's Case,* 3 Inst. 113; *R.* v. *Anderson,* 2 East, P. C. 772. This was subsequently changed by statute. 13 Geo. III. chap. 31, sec. 4; 7 Geo. IV. chap. 29, sec. 76. But the former rule was applied in a case where the taking occurred in Jersey, because it was not in the United Kingdom within the meaning of the statutes. *R.* v. *Prowes,* 1 Moody, C. C. 349.

By reason of the contiguity of the Colonies and their succeeding States, and the ease with which property stolen in one might be carried into another, the same question soon came before the courts of this country. In the earliest reported case coming to our notice, it was held that an indictment would not lie in North Carolina for a larceny committed in an adjacent territory, because the property had been brought, by the thief into that State. *State* v. *Brown* (1794) 2 N. C. (1 Hayw.). 100, 1 Am. Dec. 548. In the next case it was held by the old circuit court for this District that one who had stolen a watch in Maryland and brought it into the District could be held guilty of larceny in the latter. *United States* v. *Tolson* (1803) 1 Cranch. C. C. 269, Fed. Cas. No. 16,530. See also *United States* v. *Mason,* 2 Cranch, C. C. 410, Fed. Cas. No. 15,738. The supreme judicial court of Massachusetts declared a similar doctrine in 1804. (*Com.* v. *Collins,* 1 Mass. 116), and has since

adhered to it (*Com.* v. *Andrews*, 2 Mass. 14, 3 Am. Dec. 17; *Con.* v. *Holder*, 9 Cray, 7; *Com.* v. *White*, 123 Mass. 430–433, 25 Am. Rep. 116). That court, however, refused to apply it in a case where the goods had been stolen in Canada. *Com.* v. *Uprichard*, 3 Gray, 434, 63 Am. Dec. 762.

The doctrine as applied to cases of property stolen in another State or Territory of the Union has been followed in Connecticut, Maryland, Mississippi, Ohio, Oklahoma, Oregon, and South Carolina. *State* v. *Ellis*, 3 Conn. 185, 8 Am. Dec. 175; *Worthington* v. *State*, 58 Md. 403, 42 Am. Rep. 333; *Watson* v. *State*, 36 Miss. 593; *Hamilton* v. *State*, 11 Ohio, 435; *Barclay* v. *United States*, 11 Okla. 503, 69 Pac. 798; State v. Hill, 19 S. C. 435.

The supreme courts of Maine and Vermont go farther than that of Massachusetts, and apply the rule in cases where property stolen in Canada had been brought by the thief into the State. *State* v. *Underwood*, 49 Me. 181, 77 Am. Dec. 254 (three of the seven justices dissenting); *State* v. *Bartlett*, 11 Vt. 650–653. In this last case, however, Judge Redfield said: "If this question were entirely new, and to be now decided upon the weight of authority at common law, I confess I should incline to the view taken by the respondent's counsel."

The cases of *People* v. *Burke*, 11 Wend. 129; *People* v. *Williams*, 24 Mich. 156, 9 Am. Rep. 119; *Ferrill* v. *Com.* 1 Duv. (Ky.) 154; and *State* v. *Butler*, 67 Mo. 59, have been cited as declaring the same rule; but each of these is governed by statutes enacted to remedy the mischief of bringing stolen goods into their respective States and the question for decision was the power of the State to enact such a statute. See also *Clark* v. *State*, 27 Tex. App. 405, 11 S. W. 375; Penal Code, 797, 798. In addition to the State of North Carolina, heretofore mentioned, the contrary doctrine has obtained in New York, New Jersey, Pennsylvania, Tennessee, Indiana, Louisiana, Nebraska, and Nevada. *People* v. *Gardner*, 2 Johns. 477; *People* v. *Schenck*, 2 Johns. 479; Simmons v. Com. 5 Binn. 617; State v. *Le Blanch*, 31 N. J. L. 82; *Simpson* v. *State*, 4 Humph. 456; *Beal* v. *State* 15 Ind. 378; *State* v. *Reonnals* 14 La. Ann.

·276; *People* v. *Loughridge,* 1 Neb. 11, 93 Am. Dec. 325; State
v. *Newman,* 9 Nev. 49, 16 Am. Rep. 3.

Since the early cases reported in Cranch, C. C. before
referred to, the question seems never to have been raised in the
·courts of this District until 1901. *Davis* v. *United States,* 18
App. D. C. 468–494. Its difficulty, and the conflict of authority
regarding it, were mentioned, but its decision was not considered
necessary.

The determination of the question cannot now be avoided,
and, notwithstanding our very great respect for the judgment
·of the former court we do not feel bound by its decision if
thoroughly convinced that it is unsound in principle. It estab-
lishes no rule of property that the public interest would demand
adherence to after long acquiescence in and repeated action
upon it, but involves principles of constitutional right and nat-
ural justice that are of vital interest to the particular individ-
ual whose liberty is involved, and do not affect the rights of
any other person.

The cases asserting the jurisdiction of the courts of the
·country or State into which goods stolen in another may be
taken by the thief proceed upon the legal assumption as we have
·seen, that when property has been feloniously taken, every act
·of removal by the thief may be regarded as a new taking and
asportation, because the right of possession and of property of
the owner, who has been wrongfully dispossessed, continues, and
·so at each removal it may be regarded, in law, as again taken
·from his possession. This is a fiction of law, a subtlety merely,
that was adopted in England so as to extend the venue in such
·case to any county of the Kingdom into which the thief might
·carry the goods. The question was one chiefly of convenience,
·involving only the place of trial. There was but one sovereign
whose law had been violated in the first actual taking as well
as in the later constructive ones. This law governed every step
in the proceeding,—indictment, trial, and sentence. The
English courts, however, declined to entertain the legal subtlety
·or friction where the original actual felonious taking had oc-
·curred outside of England, and the situation was provided for

by statute, as it has been in several of our States. The doctrine of the States which applied the English rule as to counties to thefts accruing in sister States is thus accounted for by Chief Justice Shaw: "It seems to have been considered that although the several States are, in their administration of criminal law, regarded as sovereign and independent, yet, as they were originally English colonies, and acknowledged their subjection to the common law of England, and claimed its privileges, and all equally derived their principles of criminal jurisprudence mainly from that source, and as they had been, both before and since the Revolution, closely united for many purposes, there was an analogy, more or less strict, between the relations of these States to each other, and those of counties under the same government; and therefore that the same rule might be safely adopted." Com. v. Uprichard, 3 Gray, 438, 63 Am. Dec. 762. In that case the court refused to apply the rule to a theft occuring in Canada, although that country is subject to the common law; and the learned Chief Justice intimates that if it were a new question as to thefts occurring in a sister State the same rule would be applied thereto, and his reasoning inevitably leads to that conclusion. He says that laws are essentially local and limited to the boundaries of the States prescribing them, and the case, in another, must necessarily proceed on the ground that the goods were actually stolen in the State to which they were removed. That the theft in Canada was not a violation of the law of Massachusetts, and the indictment proceeds upon the ground that the offense had been committed in that State upon the assumption that bringing the goods into it amounted to a new larceny and this "involves the necessity of going to the law in force in Nova Scotia to ascertain whether the act done there was felonious, and consequently whether the goods were stolen; so that it is by the combined operation of the force of both laws that it is made felony here. Were it any other offense than that of larceny, which gives an ambulatory character to the offense, by the movable character and the guilty possession of the goods stolen, there could be no doubt of the law, and no plausible pretense that our law had been violated, or the party amenable

to penalties created by it.  *  *  *  The question is one of principle, whether the defendants have violated our law. It is said that they commit a new theft, by the possession of stolen goods in our jurisdiction. But what are stolen goods ? Are we to look to our own law, or to the law of Nova Scotia, to determine what is a felonious taking, what is the *animus furandi,* and the like ? If we look to the law of Nova Scotia, and that law is different from ours in defining and prescribing theft, then we may be called on to punish as a crime that which would be innocent here. If we look to our own law, then a taking and carrying away of goods in Nova Scotia under circumstances which would not be criminal there might be punishable here. *  *  *  It seems difficult to distinguish this from judicially enforcing and carrying into effect the penal laws of another government, instead of limiting our criminal jurisprudence to the execution of our own."

No principle is better settled or more universally applied than that the courts of one country will not execute the penal laws of another, and it applies with unabated force to the several States of the Union in their relations with each other and to the United States also. *Wisconsin* v. *Pelican Ins. Co.* 127 U. S. 265–290, 32 L. ed. 239–243, 8 Sup. Ct. Rep. 1370.

It is for this reason that the Constitution of the United States expressly provides for the surrender of fugitives from justice by one State to another. The supposed analogy between the relations of counties to States, and of States to States, is without a shadow of support. The several States being foreign to each other, save as to matters provided for by the Constitution, the laws of one are not noticeable as laws by the courts of another, but must be proved as facts. The argument which denies punishment for larceny committed in a foreign country where the goods are brought into the State, applies with equal force to the States.

To convict the appellant of larceny in this case, it is clear that force must be given to the laws of Virginia and North Carolina, in one of which the original caption occurred, for it is the continuance of a caption, felonious there, that under the legal fiction constitutes a felonious caption in the District of Columbia.

The felonious taking of the goods in Virginia or North Carolina is the necessary beginning and groundwork of the offense here. We are forced to the conclusion that the court erred in the charge to the jury. It may be that a proved and confessed criminal may escape deserved punishment by reason of this conclusion, though it does not necessarily follow, for he may be detained and removed to one of the other States for trial upon a prosecution commenced there. Whatever the result, the principles of the law cannot be made to bind by considerations of expediency. In view of the ease with which stolen property may be brought into the District of Columbia, under the circumstances disclosed in this case, and the frequent difficulty of ascertaining the place where the felonious taking actually occurred, it might be wise for the Congress to enact a law similar to that prevailing in some of the States, before referred to, to remedy the resulting mischief. It can only be remedied, if at all, by legislation. The judgment will be reversed, and the case remanded for a new trial not inconsistent with this opinion.

*Reversed.*