Robert DOBYNS, Appellant,

v.

UNITED STATES, Appellee.

No. 08–CM–529.

District of Columbia Court of Appeals.

Argued Sept. 20, 2011.
Decided Oct. 27, 2011.

Christine A. Monta, Public Defender Service, with whom James Klein and Jacklyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Andrea L. Hertzfeld, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Chrisellen Kolb, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Following a bench trial, Robert Dobyns was convicted of one count of second-degree theft in violation of D.C.Code §§ 22–3211(a)–(b), –3212 (b) (2001). Dobyns challenges the Superior Court's jurisdiction by contending that the theft took place solely in Maryland. We affirm.

## I.

In July 2005, Renee Harris, Dobyns's former girlfriend, permitted Dobyns to borrow her car from Forestville, Maryland, to have a stereo installed in Baltimore, Maryland. After the stereo was installed, Harris twice asked Dobyns to return her car. After the second request,

Dobyns agreed to deliver Harris's car to her in Forestville, but Dobyns arrived with his own car instead. Dobyns then informed Harris that she could pick up her car in Baltimore at a location familiar to both of them, but Dobyns was not there when Harris arrived. While in Baltimore, Harris called Dobyns from a cell phone and a pay phone but was unable to locate him. Harris then filed a police report in Maryland stating that her car was stolen. After Harris filed the police report, Metropolitan Police Department ("MPD") Officers stopped Dobyns while he was driving Harris's car in the District of Columbia and arrested him for an unrelated offense. During the stop, Dobyns stated that he knew Harris wanted her car returned to her but that he refused to return it, and Harris needed to retrieve the car herself.

## II.

■ At trial, the above-cited evidence was presented. At no time did counsel for Dobyns contend that he could not be convicted of theft because the offense was not committed in the District of Columbia. In this appeal, citing *Brown v. United States,* Dobyns asserts for the first time that the Superior Court lacked subject-matter jurisdiction because the theft occurred in Maryland rather than the District of Columbia. 35 App.D.C. 548, 549, 555 (1910); (holding that a person who stole articles of jewelry in South Carolina or Virginia on a train *en route* to the District of Columbia could not be convicted of larceny[1] in the District of Columbia where he was arrested in possession of the stolen articles). The question of jurisdiction involves "the application of law to the trial court's factual findings, [and] is a legal issue which we review *de novo.*" *Dyson v. United States,*

848 A.2d 603, 609 (D.C.2004). Although this court reviews forfeited errors under a plain error standard, *see United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), *de novo* review remains appropriate because subject-matter jurisdiction "can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in [Superior] [C]ourt." *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

■ As the party asserting a lack of jurisdiction, Dobyns "bears the burden of presenting the facts that would establish that lack." *Adair v. United States,* 391 A.2d 288, 290 (D.C.1978). Without the presentation of such evidence, the court will presume that the charged offense was committed within the court's jurisdiction. *Long v. United States,* 940 A.2d 87, 99 (D.C.2007). When evidence demonstrating a lack of jurisdiction is presented, however, the government must prove "[s]ubject matter jurisdiction ... beyond a reasonable doubt, but it can be shown by indirect evidence and inferences reasonably drawn from that evidence." *Id.* (citation omitted).

■ D.C.Code § 11–923(b)(1) (2001) provides the Superior Court with jurisdiction over "any criminal case under any law applicable exclusively to the District of Columbia." This section requires the criminal act to occur within the geographic boundaries of the District of Columbia. *United States v. Baish,* 460 A.2d 38, 40 (D.C.1983). However, "the criminal act alone need not constitute the offense. Where it serves as one of several constituent elements to the complete offense, we

---

1. As discussed, *infra,* the offense of larceny, among a number of other similar offenses, was repealed in 1982 and replaced with the current theft statute, § 22–3211. BILL No. 4–133, THE "DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982" at 10, 28.

have found jurisdiction to prosecute in the Superior Court, even though the remaining elements occurred outside of the District."

## III.

■ The Superior Court had subject-matter jurisdiction because all of the elements of Dobyns's conviction for second-degree theft occurred in the District of Columbia. The elements of theft are: (1) that a person wrongfully obtains or uses;[2] (2) the property of another; (3) with intent "[t]o deprive the other of a right to the property or a benefit of the property; or [t]o appropriate the property to his or her own use or to the use of a third person." D.C.Code § 22–3211(b) (2001) (emphasis added).[3] The statute defines "wrongfully obtains or uses" as "(1) taking or exercis-

ing control over property; (2) *making an unauthorized use*, disposition, or transfer of an interest in or possession of property; or (3) obtaining property by trick, false pretense, false token, tampering, or deception."[4]  *Id.* at § 22–3211(a) (emphasis added). MPD officers stopped and arrested Dobyns while he was using Harris's car without her permission within the District of Columbia. Thus, the Superior Court had jurisdiction because Dobyns's "unauthorized use" of Harris's car occurred within the District of Columbia, and he had the intent to deprive Harris of her right to the vehicle.[5]

Dobyns claims, however, that when the District of Columbia consolidated its various theft-related offenses into one statute, § 22–3211, the term "unauthorized use"

2. In contrast, the larceny statute under previous law provided that "[w]hoever shall … *take and carry away* any property of value shall be … [punished]." D.C.Code §§ 22–2201, –2202 (1973) (emphasis added).

3. D.C.Code § 22–3211(a)–(b) (2001) states, in pertinent part:

(a) For the purpose of this section, the term "wrongfully obtains or uses" means: (1) taking or exercising control over property; (2) making an unauthorized use, disposition, or transfer of an interest in or possession of property; or (3) obtaining property by trick, false pretense, false token, tampering, or deception. The term "wrongfully obtains or uses" includes conduct previously known as larceny, larceny by trick, larceny by trust, embezzlement, and false pretenses.

(b) A person commits the offense of theft if that person wrongfully obtains or uses the property of another with intent:

(1) To deprive the other of a right to the property or a benefit of the property; or (2) To appropriate the property to his or her own use or to the use of a third person.

4. The D.C. Law Revision Commission drafted § 22–3211 as part of a major proposal to reform the District of Columbia's theft and white collar related crimes, which became the

subject of public hearings in 1980. Bill No. 4–133, the "District of Columbia Theft and White Collar Crimes Act of 1982" at 2. It is unclear whether the D.C. Law Revision Commission relied upon a uniform law proposal in drafting the theft statute. The Commission, however, did not adopt the Model Penal Code, which defines theft, in relevant part, as "unlawfully tak[ing], or exercis[ing] unlawful control over, movable property of another with purpose to deprive him thereof." Model Penal Code § 223.2 (2001). A general search of state laws has revealed that other jurisdictions do not generally define theft as "wrongfully obtaining or *using*" the property of another.

5. This court has on one occasion stated, in *dicta*, that an individual who steals a vehicle in Maryland cannot be prosecuted for violating the theft statute in the District of Columbia where he was found in possession of the vehicle. *Morrison v. United States*, 547 A.2d 996, 998 n. 3 (D.C.1988) (stating that a Jeep "was taken from a parking lot in Maryland, so that appellant could not have been prosecuted for theft in the District of Columbia"). The defendant in *Morrison*, however, had been charged with receiving stolen property, not theft, and this court did not address the "unauthorized use" provision of § 22–3211. *Id.* at 998.

was only intended to encompass embezzlement-type offenses "in which someone converts, conceals, or misappropriates another's property." BILL NO. 4–133, THE "DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982" at 11 [hereinafter COMMENTS]. As a result, Dobyns asserts that the "unauthorized use" provision does not criminalize his conduct in the District of Columbia because under the previous law he would have committed a larceny rather than an embezzlement-type offense.[6] We reject that interpretation.

◼ The initial step in statutory interpretation is to "first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning" while construing the words in their "ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal citations and quotations omitted). The court may appropriately look beyond plain meaning, however, where (1) "a review of the legislative history or an in-depth consideration of alternative constructions" of the statutory language reveals ambiguities that the court must resolve; (2) the literal meaning of the statute "produces absurd results"; (3) the plain meaning construction leads to an "obvious injustice"; or (4) refusal to adhere to plain meaning is necessary in order to "effectuate the legislative purpose" of the statute as a whole.

◼ We are satisfied that Dobyns made an unauthorized use—as proscribed by the theft statute—of Harris's car in the District of Columbia within the plain meaning of that statute. As we have said, the theft statute applies where the person charged "wrongfully obtains or uses the property of another," which is defined, *inter alia*, as "making an unauthorized use." D.C.Code § 22–3211(a)–(b) (2001). The term "unauthorized use" is also employed in D.C.Code § 22–3215 (2001), which sets forth the offense of Unauthorized Use of a Motor Vehicle ("UUV"). Where a legislature "borrows terms of art in which are accumulated the legal tradition and meanings of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in

---

6. Dobyns argues that "[b]efore the 1982 recodification, Mr. Dobyns's failure to return Ms. Harris's car would have been classified under D.C. law as larceny. *See Reed v. United States*, 239 A.2d 156, 158 (D.C.1968) ('[W]here the possessor of property gives up temporary custody for a limited purpose without relinquishing actual dominion or control, the custodian's conversion of that property is larceny.')." In addition, Dobyns maintains he could not have been convicted here of larceny simply by bringing stolen property into the District of Columbia because the District of Columbia has rejected the "continuing offense" doctrine of theft. *Brown*, 35 App.D.C. at 555.

We think it more likely that Dobyns's conduct violated the offense of larceny after trust, which, before the theft offenses were consolidated into § 22–3211 in 1982, occurred "[i]f any person entrusted with the possession of anything of value ... for the purpose of applying the same for the use and benefit of the owner or person so delivering it, ... fraudulently convert[ed] the same to his own use...." D.C.Code § 22–2203 (1973).

We also think that Dobyns could not have been convicted in the District of Columbia under previous law, on these facts, of either larceny, under Dobyns's interpretation, or larceny after trust because all of the elements of both of these offenses were committed in Maryland. For our purpose here, however, the nature of the offense committed under previous law is irrelevant. Although we conclude that Dobyns could not have been convicted in the District of Columbia of larceny and larceny after trust under the previous law because all of the elements of these offenses occurred outside the District of Columbia, we are satisfied, for the reason stated in the text, that Dobyns's conduct violated the theft statute, § 22–3211.

the body of learning from which it was taken." *1618 Twenty–First Street Tenants' Ass'n, v. The Phillips Collection,* 829 A.2d 201, 203 (D.C.2003) (citing *Bates v. District of Columbia Bd. of Elections & Ethics,* 625 A.2d 891, 894 (D.C.1993) (quoting *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952))). The definition of an "unauthorized use" in the UUV statute, which has been essentially unchanged for nearly a century, is the taking, using, or operating of a motor vehicle without the consent of the owner.[7] D.C.Code § 22–3215 (2001). A defendant may be convicted of UUV even if the vehicle was initially taken outside the District of Columbia so long as the vehicle was subsequently used without authorization within the District of Columbia. *In re R.K.S.,* 905 A.2d 201, 218 (D.C.2006) (upholding a UUV conviction where the car was stolen in Maryland and driven into the District of Columbia). When Dobyns was arrested, he was using and operating Harris's car without her permission within the District of Columbia. Thus, his conduct violated both statutes.[8]

Our conclusion that the plain meaning of the theft statute includes Dobyns's conduct would ordinarily end our inquiry. However, because Dobyns contends that the legislative history requires a contrary result, we will now determine whether our interpretation should be overridden by any of the factors discussed above in *Peoples Drug Stores, Inc.* We conclude that none of these factors applies here.

First, the plain meaning of the statute's language is not inconsistent with legislative history. Dobyns's argument would essentially have this court determine which pre–1982 theft offense applies and then apply the relevant case law, such as *Brown,* for that particular type of property conversion. However, the enactment of D.C.Code § 22–3211 was clearly intended to avoid having to engage in "highly technical" distinctions between various forms of theft that "served only to confuse the charging process."[9] COMMENTS at 10; *see also Byrd v. United States,* 598 A.2d 386, 391, n. 12 (D.C.1991) (noting that the definition of theft in D.C.Code § 22–3211 "transcends the traditional and everyday concept of theft" by consolidating more than thirty theft-type statutes). In addition, the legislative history indicates that while there was no intent to *"measurably* alter the scope of District of Columbia law" and that the statute was to "be construed to *at least* include conduct currently prohibited by theft-related statutes contained in the District of Columbia law," nothing in the legislative history precludes our interpretation of the statute.[10] EXTEN-

---

7. The statute proscribing the Unauthorized Use of a Vehicle was first enacted in 1913, and defined "unauthorized use" as "tak[ing], us[ing], operat[ing], or remov[ing] [a vehicle] from a garage." Unauthorized Use of Vehicles, ch. 24, § 826b, 37 Stat. 656 (1913).

8. At oral argument, counsel for Dobyns conceded that, on these facts, Dobyns was committing the offense of Unauthorized Use of a Motor Vehicle in violation of § 22–3215.

9. Indeed, the discussion above concerning whether Dobyns would have committed a larceny, a larceny after trust, or an embezzlement under previous law is illustrative of what the enactment of § 22–3211 was designed to avoid.

10. Dobyns also claims that if the District of Columbia Council had intended to criminalize the use of items wrongfully obtained in another jurisdiction in § 22–3211, the Council would have repealed D.C.Code § 22–1808 (2001) along with other code provisions when § 22–3211 was enacted to consolidate theft-type offenses.

However, § 22–1808 is not limited to criminalizing the bringing of property obtained by theft into the District of Columbia. The statute states:

Any person who by the commission outside the District of Columbia of *any act* which, if

SION OF COMMENTS ON BILL NO. 4–133: THE DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982 at 15 (emphasis added). We think that, based on these comments, it was expected by the lawmakers that some conduct beyond that banned by the statutes that were repealed could be included within the reach of the new law.

■ Finally, the plain meaning of the statute neither produces an absurd result nor creates an obvious injustice. Plain meaning is the general rule, and "a court should look beyond the ordinary meaning of the words of a statute only where there are 'persuasive reasons' for doing so." *Peoples Drug Stores, Inc.*, 470 A.2d at 755. For the reasons stated, we discern no reasons for departing from the plain meaning of this statute on the facts presented here.

Accordingly, the judgment of the Superior Court is affirmed.

---

committed within the District of Columbia, would be a criminal offense under the laws of said District, thereby obtains any property or other thing of value, and is afterwards found with any such property or other such thing of value in his or her possession in said District, or who brings any such property or other such thing of value into said District, shall, upon conviction, be punished in the same manner as if said act had been committed wholly within said District. D.C.Code § 22–1808 (2001) (emphasis added). Thus, § 22–1808 would appear to allow the prosecution of persons who bring property into the District of Columbia obtained by means other than theft, such as burglary,

D.C.Code § 22–801 (2001), robbery, D.C.Code § 22–2801 (2001), and carjacking, D.C.Code § 22–2803 (2001). In fact, § 22–1808 does not require that the property brought into the District of Columbia be stolen or wrongfully obtained, so that offenses such as trademark counterfeiting, D.C.Code § 22–902 (2001), and bribery, D.C.Code § 22–712 (2001), could also be prosecuted under § 22–1808. Because the property brought into the District of Columbia under § 22–1808 need not be obtained by theft, the enactment of § 22–3211 criminalizing the use of stolen items brought into the District of Columbia would not have led the Council to repeal § 22–1808.