*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-123

JEFFREY H. HUNT, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-20889-12)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued April 22, 2014      Decided December 31, 2014)

*Farin Mirvahabi* for appellant.

*Lauren R. Bates*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

BECKWITH, *Associate Judge*: On December 2, 2012, Appellant Jeffrey Hunt cut off a global positioning system (GPS) monitoring device that he was required to wear by his Community Supervision Officer (CSO) of the Court Services and Offender Supervision Agency. He was convicted after a bench trial of violating

D.C. Code § 22-1211 (a)(1)(A) (2012 Repl.),[1] which makes it a misdemeanor for a person to "intentionally remove" a GPS device that he or she is "required to wear . . . as a condition of . . . parole." On appeal, Mr. Hunt challenges the sufficiency of the government's evidence, contending that the government failed to show that he was required to wear the GPS device as a "condition" of his parole. We agree, and we reverse.

## I.      Legal Framework

In 1997, as part of legislation transferring the District of Columbia prison system to federal control, Congress transferred the "jurisdiction and authority" of the Board of Parole of the District of Columbia to the United States Parole Commission (USPC) and authorized USPC to "impose conditions upon an order of parole." D.C. Code § 24-131 (a)(1). USPC has "sole authority . . . to establish the conditions of release, for all District of Columbia Code prisoners who are serving sentences for felony offenses, and who are eligible for parole by statute." 28 C.F.R. § 2.70 (b) (2014). For misdemeanor offenses, conditions of release are imposed by the Superior Court. D.C. Code § 24-131 (a)(3).

Congress also created the Court Services and Offender Supervision Agency

---

[1] All subsequent statutory references are also to D.C. Code (2012 Repl.).

(CSOSA) to "carry out the conditions of release imposed by the United States Parole Commission or, with respect to a misdemeanant, by the Superior Court of the District of Columbia." D.C. Code § 24-133 (c)(4). More specifically, CSOSA "provide[s] supervision, through qualified supervision officers, for offenders on probation, parole, and supervised release pursuant to the District of Columbia Official Code." D.C. Code § 24-133 (c)(1). No statute or regulation provides CSOSA with the authority to impose conditions of release.

One way in which CSOSA supervises releasees is by issuing "intermediate sanctions" to encourage compliance with release conditions. D.C. Code § 24-133 (b)(2)(F). CSOSA's regulations explain to supervisees how the sanctions operate:

> If your CSO has reason to believe that you are failing to abide by the general or specific conditions of release or you are engaging in criminal activity, you will be in violation of the conditions of your supervision. Your CSO may then impose administrative sanctions (see paragraph (b) of this section) and/or request a hearing by the releasing authority. This hearing may result in the revocation of your release or changes to the conditions of your release.

28 C.F.R. § 810.3 (a) (2014). "Administrative sanctions available to the CSO" include daily check-ins, community service, increased group activities, increased drug testing, drug abuse assessments, residential treatment placement, travel restrictions, and "[e]lectronic monitoring for a specified period of time." 28 C.F.R.

§ 810.3 (b) (2014). Sanctions "can be applied short of court or USPC approval" and enable CSOSA to "provide swift, certain, and consistent responses to non-compliant behavior." Community Supervision: Administrative Sanctions, 68 Fed. Reg. 19738-01 (April 22, 2003). "Imposing the sanctions quickly and consistently may prevent escalation of the offender's non-compliant behavior." *Id.* In other words, by issuing sanctions, CSOSA "introduce[s] an accountability structure into the supervision process" without commencing revocation proceedings or seeking a hearing for a change in release conditions. *Id.*

## II.    Application to Mr. Hunt's Case

At the time the events took place in 2012, Mr. Hunt was under CSOSA supervision as a parolee from a 1982 criminal charge. Mili Patel, the CSO in charge of supervising Mr. Hunt, testified that she "referred" Mr. Hunt for GPS supervision on August 15 and November 14, 2012. According to Ms. Patel, Mr. Hunt "was not actually on GPS based on a—on his release conditions" but was instead required to wear the device as "a graduated sanction."[2]

---

[2]    When Ms. Patel testified that "we placed him on [GPS monitoring] after he did something," the court asked whether "that would make it a condition of his probation [sic]," to which Ms. Patel responded, "It doesn't make it a condition." At trial, the government presented no evidence explaining what Mr. Hunt had done to prompt the CSO to require him to wear the device. At sentencing, the prosecutor stated that Mr. Hunt had been placed on GPS monitoring because he

(continued…)

There are two elements to the crime charged under D.C. Code § 22-1211 (a)(1)(A). First, the defendant must be "required to wear a device as a condition of a protection order, pretrial, presentence, or predisposition release, probation, supervised release, parole, or commitment, or . . . while incarcerated." Second, the defendant must "[i]ntentionally remove or alter the device, or . . . intentionally interfere with or mask or attempt to interfere with or mask the operation of the device."

Mr. Hunt does not dispute that the GPS he was wearing falls within the statutory definition of "device." *See* D.C. Code § 22-1211 (a)(2). Nor does he dispute that he intentionally removed the device from his body. Mr. Hunt argued at trial that the government failed to present evidence that GPS monitoring was authorized as a condition of his parole, as the statute requires. The trial court found that the GPS was required as part of "a sanction-based agreement that the person entered into. . . . It was not an original condition of probation." The trial court nevertheless concluded that the condition "doesn't have to be court ordered" to fall within the statute; "it can be probation ordered to be required." Accordingly, after finding that CSO Patel "required [Mr. Hunt], based on the

_____

(…continued)
"had been in the hospital the day before. He had been found with, I believe, a .25 blood alcohol level in his car."

sanctioned-based treatment she entered into with him, to participate in the GPS," the court convicted Mr. Hunt of violating D.C. Code § 22-1211 (a)(1)(A).

On appeal, Mr. Hunt reiterates his argument that the government failed to present sufficient evidence that he was required to wear the GPS device as a "condition" of his parole. The meaning of the term "condition" is a question of statutory interpretation that we review de novo. *See Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc).

In our view, the trial court erred in interpreting D.C. Code § 22-1211 to include monitoring requirements imposed by CSOSA as sanctions and not just those imposed by USPC or the Superior Court as release conditions.[3] The court focused solely on whether Mr. Hunt was legally required to wear the GPS, not on whether it was required as a condition of his parole. We interpret the statute to comport with the distinction—well established by statute and regulation—between conditions and sanctions. *See Dobyns v. United States*, 30 A.3d 155, 159-60 (D.C. 2011) ("Where a legislature 'borrows terms of art in which are accumulated the legal tradition and meanings of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of

---

[3] USPC may impose conditions involving "electronic signaling devices" as "special conditions" of release pursuant to 28 C.F.R. § 2.204 (b)(2)(iii) (2014).

learning from which it was taken.'" (quoting, among other cases, *Morissette v. United States*, 342 U.S. 246, 263 (1952))).

As discussed above, the statutory framework here is clear: USPC or the Superior Court imposes conditions on release and CSOSA monitors compliance with those conditions. D.C. Code §§ 24-131 (a); -133 (c)(4). CSOSA imposes administrative sanctions if releasees "are failing to abide by the general or specific conditions of release," and sanctions are an *alternative* to requesting a hearing that "may result in . . . changes to the conditions of your release." 28 C.F.R. § 810.3 (a) (2014). Sanctions and conditions are thus distinct concepts, and the criminal statute here only reaches electronic monitoring "required . . . as a condition." D.C. Code § 22-1211 (a)(1). Because the evidence at trial showed that GPS monitoring was a sanction imposed by CSO Patel, the record contains no evidence that Mr. Hunt was "required to wear a device as a condition of . . . parole." *Id.*

Our interpretation of D.C. Code § 22-1211 does not change when a releasee's conditions of release include a general requirement to comply with a supervision officer's sanctions.[4] By its plain language, D.C. Code § 22-1211

---

[4] *See, e.g.*, 28 C.F.R. § 2.204 (a)(6)(vi) (2014), which directs certain releasees to "submit to the sanctions imposed by the supervision officer" as a "condition" of release. This regulation applies to District of Columbia parolees like Mr. Hunt. *See* 28 C.F.R. 2.85 (a)(1) (2014).

applies to persons "required to wear a device as a condition . . . of parole," not to persons required to wear a device as a sanction who, in removing the device, violate a *different* condition requiring compliance with CSO-imposed sanctions.[5]

Viewing the evidence in the light most favorable to the government, as we must in a sufficiency challenge, *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006), we cannot conclude that any evidence established that Mr. Hunt was required to wear the GPS device as a "condition" of his parole. In fact, CSO Patel's testimony indicated the very opposite: his monitoring requirement was not a condition of release.[6]

---

[5] Even if the statute might reasonably be given a broader reading than set forth in this opinion, the rule of lenity would preclude its application here. *See Ruffin v. United States*, 76 A.3d 845, 852 (D.C. 2013) ("[C]riminal statutes are to be strictly construed and should not be interpreted to extend criminal liability beyond that which [the legislature] has plainly and unmistakenly proscribed.") (quoting *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012)). Our interpretation of this criminal statute does not affect USPC's ability to initiate revocation proceedings against individuals who violate sanctions. *See* 28 C.F.R. 810.3 (c) (2014) (allowing USPC to issue a warrant or summons for parolees in violation of sanctions); 28 C.F.R. 2.204 (a)(6)(vi) (2014) (allowing USPC to revoke release based "on the alleged violation(s) [of release conditions] upon which the graduated sanction was based" when an individual violates sanctions).

[6] CSO Patel's testimony that Mr. Hunt "was in front of the parole commission a few years back and there was a case plan which did allow us to put him on GPS if we wanted" does not support a contrary view, as no evidence suggested that Mr. Hunt's case plan included GPS monitoring as a condition or even that USPC had authorized the case plan.

### III.    Conclusion

We reverse the judgment of the trial court and remand with instructions to enter a judgment of acquittal.  *See Burks v. United States*, 437 U.S. 1, 18 (1978).

*So ordered.*