[Civ. No. 53360. First Dist., Div. Two. July 19, 1982.]

DONNA JEAN WOOD et al., Plaintiffs and Appellants, v.
MARION J. WOODS, as Director, etc., Defendant and Respondent.

956

**COUNSEL**

Peter H. Reid and Daniel Siegel for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and Stephanie Wald, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**MILLER, J.**—This case involves the State of California's most recent attempt to institute regulations in the aid to families with dependent children (hereinafter AFDC) program in California that assume the availability of a stepparent's income to support a nonadopted stepchild, without violating pertinent federal laws. Prior attempts by California to enact such regulations were invalidated by the United States Supreme Court in *Lewis* v. *Martin* (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282], and, again, by a California appellate court in *Camp* v. *Swoap* (1979) 94 Cal.App.3d 733 [156 Cal.Rptr. 600]. While recent changes in the governing federal legislation have mooted the issue with respect to prospective benefits, we are, nonetheless, called upon to evaluate whether the challenged provisions were in conformity with federal law prior to its recent amendment.

Appellants Donna Jean Wood, Deborah B. Carter and Heidi Ferrara are mothers who receive AFDC benefits. They brought this action for declaratory and injunctive relief individually, on behalf of their children and on behalf of all others similarly situated, challenging regulations promulgated in January 1980 by respondent Department of Social Services (hereinafter Department). The challenged regulations consist of amendments to section 43-105.5 of the Eligibility and Assistance Standards, Manual of Policies and Procedures. Those regulations provide in relevant part as follows:

"A nonadoptive stepparent is responsible for the support of his/her spouse's natural or adopted children living in the home. However, such support liability is limited to the spouse's community property interest in his/her income.... The spouse's community property interest shall be considered unconditionally available to him/her for the support of the stepchild(ren) living in the home...."

The above regulation conclusively presumes that stepparent income reduces the needs of the dependent children whether or not the income is in fact available or actually used for that purpose. In the case of appellant Donna Jean Wood, her previous AFDC grant of $487 per month to support three dependent children was entirely terminated when the regulation came into effect in spite of the fact that she declared under oath that the stepfather's income was not actually available to the nonadopted stepchildren.

The superior court originally granted appellants a temporary restraining order but subsequently denied appellants' motion for preliminary injunction. Thereafter, the trial court granted respondent's motion for summary judgment.

On appeal, appellants maintain that the challenged AFDC regulations violated governing federal laws that allowed the presumption of stepparent support only under certain circumstances not met by California law.

I. HISTORY OF THE ISSUE

The AFDC program is based on a scheme of "cooperative federalism." (*King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128]; *Camp* v. *Swoap, supra*, 94 Cal.App.3d 733, 743.) ■ State participation in the program is voluntary. However, once a state chooses to participate, its plan must comply with the mandatory requirements of the Social Security Act. (*King* v. *Smith, supra*, 392 U.S. at pp. 316-317 [20 L.Ed.2d at pp. 1125-1126]; *Camp* v. *Swoap, supra*.)

In *King* the United States Supreme Court established that the "paramount goal" of the AFDC program is the protection of needy dependent children from economic insecurity. (392 U.S. at p. 325 [20 L.Ed.2d at p. 1130].) The *King* court recognized that the administrative framework designed to implement this objective provides that the Secretary of what is now the Department of Health and Human Services (hereinafter Secretary) has the initial authority to interpret and implement the statutory provisions. (392 U.S. at pp. 316-317 [20 L.Ed.2d at pp. 1125-1126].) Pursuant to 42 United States Code sections 601 and 602, the Secretary must establish requirements for state plans seeking to receive matching federal funds for their AFDC program. Congress specifically mandated the Secretary to establish guidelines governing what state agencies may consider in determining eligibility for AFDC benefits. (42 U.S.C. § 602.) Since the early years of the program's enactment, the Secretary has consistently promulgated strict guidelines concerning which income and resources may be properly considered by the state agency in order to insure the paramount goal of protecting the needy children from economic insecurity. The recurrent theme of these regulations is that only income and resources *actually received* and *in fact available* are to be considered in determining need. Thus, 45 Code of Federal Regulations § 233.90, the governing

federal regulation at the time *King* was decided, stated in relevant part: "[T]he State plan must provide that only income and resources that are, in fact, available to an applicant or recipient for current use on a regular basis will be taken into consideration in determining need and the amount of payment." This regulation was expressly approved by the Supreme Court in *King.* (392 U.S. 309, at p. 319, fn. 16 [20 L.Ed.2d at p. 1127].)

Following the Supreme Court's indorsement in *King,* the Secretary promulgated a more refined version of the regulation. As amended, this regulation provided in part: "'(a) A State plan ... must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent ... will be made only in relation to the child's natural or adoptive parent, or in relation to a child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. [¶] (b) The inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in paragraph (a) of this section is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State.... [I]n the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, *only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described paragraph (a) of this section will be considered available for children in the household in the absence of proof of actual contributions.'"* (See *Lewis* v. *Martin, supra,* 397 U.S. 552, 555-556 [25 L.Ed.2d 561, 565], italics in original.)

This regulation conflicted with California AFDC regulations that allowed the income of either nonadoptive stepfathers or "men assuming the role of spouse" (hereinafter MARS) to be considered available to the nonadopted child. The conflict provided the context for the major United States Supreme Court precedent dealing with stepparent income.

In *Lewis* v. *Martin, supra,* 397 U.S. 552, the United States Supreme Court upheld the federal regulation and designated the permissible boundaries of any similar state provisions: "HEW might reasonably

conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to support under state law must be of 'general applicability' to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated. [¶] Any lesser duty of support might merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income on which the reduction is based, that is to say, it would not approximate the obligation to support placed on and normally assumed by natural or adoptive parents. ... In the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support." (397 U.S. 552, at pp. 558-560 [22 L.Ed.2d 561, 566-567]; see also *Van Lare* v. *Hurley* (1975) 421 U.S. 338, 344-347 [44 L.Ed.2d 208, 213-216, 95 S.Ct. 1741].)

Following the decision in *Lewis*, California repealed its invalid AFDC regulations. (*Camp* v. *Swoap, supra*, 94 Cal.App.3d 733, at p. 743, fn. 8.) However, at the same time California rekindled its efforts to prevent perceived abuses in the AFDC program by enacting Civil Code section 5127.5 in the Welfare Reform Act of 1971. (*Ibid.*)

Whereas a direct approach to assuming the availability of stepparent income in California's preceding AFDC regulations had failed, the Welfare Reform Act of 1971 attempted an "indirect approach" in the form of Civil Code section 5127.5.[1] (*Camp* v. *Swoap, supra*, 94 Cal.App.3d 733, 743.) The new section 5127.5 was enacted to provide a wife with a legally enforceable right of management and control of her share of the community property in order to allow her to fulfill her legal duty to support her children. (*Id.*, at p. 736, fn. 2.)

Responding to the new statute, the predecessor of the instant respondent, California State Department of Social Welfare, promulgated

---

[1]Civil Code section 5127.5 provides in relevant part: "Notwithstanding the provisions of Section 5125 or 5127 ... the wife is entitled to the management and control of her share of the community property. [¶] The wife's interest in the community property, including the earnings of her husband, is liable for the support of her children to whom the duty to support is owed...."

AFDC regulations in 1971 stating in part: "A stepfather is not legally responsible for the support of his wife's children by another man, unless he has adopted them. However, his wife's interest in the community property, including the earnings of her husband . . . shall be considered available for the support of his stepchild(ren)." (Eligibility and Assistance Standards § 43-113, subd. 6, quoted in *Camp* v. *Swoap, supra*, 94 Cal.App.3d 733, at p. 736.)

In litigation strikingly similar to the instant case, AFDC recipients filed a class action in immediate response to the promulgation of section 43-113, subdivision (6). The trial court determined that the new California regulation violated the superior federal AFDC provisions. The appellate court affirmed declaring: "The succession of Supreme Court decisions which have interpreted and applied 45 Code of Federal Regulations, section 233.90(a), leaves little doubt that California's challenged regulations are incompatible with this federal provision barring states from assuming that nonlegally responsible persons will apply their resources to aid dependent children. The Department places great emphasis upon the nexus between the stepfather/husband and his wife which is created by Civil Code section 5127.5. The determinative relationship, however, is that between a stepfather and the nonadopted children who live in his household. Absent a legal obligation of support, the federal regulations explicitly negate the idea that in determining a child's needs, a nonadoptive stepfather may be presumed to be providing support. [Citations.]" (*Camp* v. *Swoap, supra*, 94 Cal.App.3d 733, at p. 744.)

As the foregoing discussion clearly demonstrates, there are two federal requirements governing the assumption of stepparent income. First, no income may be considered unless it is in fact available and actually received. Second, the income of a stepparent may only be assumed available where the laws of the participating state place the same obligations for support of nonadopted children upon the stepparent, as the natural or adoptive parent has for his or her children. It is out of this well-settled background that the instant case arises.

II. THE WELFARE REFORM ACT OF 1979

In enacting the Welfare Reform Act of 1979, California took yet another tack in its attempts to assume the availability of stepparent income. The act became effective on January 1, 1980, and contained three changes to existing law that are relevant here. It repealed section

209 of the Civil Code;[2] it added section 5127.6 to the Civil Code;[3] and, it added section 11261 to the Welfare and Institutions Code.[4] In response to these provisions respondent established the California AFDC regulations at issue in this case.

To determine the validity of respondent's regulations a two-pronged inquiry is necessary. First, did section 5127.6 create a duty of support on stepparents for the nonadopted children? Second, if a duty of support was created, was it adequate to satisfy the federal requirements in effect at the time?

Preliminarily we note that on October 1, 1981, the Omnibus Budget Reconciliation Act of 1981 went into effect. (See, Pub. L. No. 97-35, 95 Stats. 357-933.) The act creates new legislation that mandates states to include stepparent income in determining eligibility for AFDC irrespective of any state support obligation. (Social Security Act, § 402(a)(31); 42 U.S.C. § 602.)[5] Parallel federal regulations went into

---

[2]Former section 209 of the Civil Code provided: "An individual is not bound to maintain his or her spouse's children by a former relationship; but if the individual receives them into his or her family and supports them, it is presumed that he or she does so as a parent, and, where such is the case, they are not liable to him or her for their support, nor he or she to them for their services."

[3]Section 5127.6 of the Civil Code provides: "Notwithstanding Section 5127.5, the community property interest of a natural or adoptive parent in the income of his or her spouse shall be considered unconditionally available for the care and support of any child who resides with the child's natural or adoptive parent who is married to such spouse. The amount arising from such duty to care for and support shall be reduced by the amount of any existing previously·court ordered child support obligations of such spouse. [¶] Any contribution for care and support provided by a spouse who is not a natural or adoptive parent of the child shall not be considered a change in circumstances that would affect a court ordered support obligation of a natural or adoptive parent for that child."

[4]Section 11261 of the Welfare and Institutions Code states: "Notwithstanding Section 5127.5 of the Civil code *and to the extent permitted by federal law*, the community property interest of a natural or adoptive parent in the income of his or her spouse shall be considered unconditionally available for the care and support of any child who resides with the child's natural or adoptive parent who is married to such spouse. The amount arising from such duty to care for and support shall be reduced by the amount of any existing previously court ordered child support obligations of such spouse.

"Any contribution for care and support provided by a spouse who is not a natural or adoptive parent of the child shall not be considered a change in circumstances that would affect a court ordered support obligation of a natural or adoptive parent for that child." [Italics added.]

[5]Section 402(a) (31) of the Social Security Act provides in pertinent part that "in making the determination for any month under paragraph (7), the State agency shall

effect the same day. Thus, the issue presented in this case is moot with respect to any application after October 1, 1981. However, since appellants seek retroactive benefits for the period from January 1, 1980, to October 1, 1981, the issue of conformity with the then-governing federal law must still be decided by this court.

## III. SECTION 5127.6

*Camp* v. *Swoap* made clear that in analyzing a state statute that purports to create a legal duty on the stepparent to support nonadopted children the determinative relationship is between the stepparent and the nonadopted child who lives in his or her household. (94 Cal.App.3d 733, at p. 744.) Thus, in order to justify the challenged regulations, section 5127.6 must establish an adequate legal obligation between the stepparent and the nonadopted child. If section 5127.6 is found to address only an obligation between spouses or between a natural or adoptive parent and his or her child, it will be inadequate.

Although there exists no room for construction where statutory language is plain and unambiguous (*Cucamonga County Water Dist.* v. *Southwest Water Co.* (1971) 22 Cal.App.3d 245, 259 [99 Cal.Rptr. 557].), the language in Civil Code section 5127.6 is not so clear in meaning as to obviate the need for inquiry beyond its "plain" language. On the one hand, the first sentence of Civil Code section 5127.6 provides that the community property interest of a natural or adoptive parent in the income of his or her spouse shall be considered unconditionally available for the care and support of the natural or adoptive parent's child.[6] The sentence fails to create a duty of support on a spe-

take into consideration so much of the income of the dependent child's stepparent living in the same home as such child as exceeds the sum of (A) the first $75 of the total of such stepparent's earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in fulltime employment or not employed throughout the month), (B) the State's standard of need under such plan for a family of the same composition as the stepparent and those other individuals living in the same household as the dependent child and claimed by such stepparent as dependents for purposes of determining his Federal personal income tax liability but whose needs are not taken into account in making the determination under paragraph (7), (C) amounts paid by the stepparent to individuals not living in such household and claimed by him as dependents for purposes of determining his Federal personal income tax liability, and (D) payments by such stepparent of alimony or child support with respect to individuals not living in such household."

[6]What is perhaps most striking about the language of Civil Code section 5127.6 is that it closely resembles the language of Civil Code section 5127.5 which was found to be an inadequate basis for respondent's 1971 regulations in *Camp* v. *Swoap*. Civil Code

cific person. Moreover, the sentence does not mandate payment: it merely states that the community property interest shall be *considered* unconditionally available. On the other hand, the reference in the second sentence to "such duty to care for and support" indicates that some duty was apparently intended, although it is still unclear between which parties this duty exists.

Although we find that the "plain meaning" of the statute is more consistent with an interpretation finding a duty on the natural or adoptive parent to make his or her spouses' income available to the child, this meaning is, nonetheless, not so plain as to discourage further inquiry.

Normally, when the Legislature has sought to impose a duty of support it has used clear language to do so. Sections 196, 206 and 242 of the Civil Code,[7] for example, unequivocally establish a duty and are certain about the persons holding the duty. The Legislature's failure to use language characteristic of a firm obligation in Civil Code section 5127.6 argues against the implication of such an obligation. (See *Pennhurst State School* v. *Halderman* (1981) 451 U.S. 1 at p. 18 [67 L.Ed. 2d 694 at p. 703, 101 S.Ct. 1531 at 1540].

It is interesting to note that the particular placement of Civil Code section 5127.6 in the code logically suggests an interspousal duty and not an obligation between a stepparent and his or her unadopted stepchild. It is an accepted doctrine of statutory interpretation that a statute, especially one the meaning of which is not clear on its face, may be interpreted by reference to related statutes, commonly referred to as statutes in pari materia. (2A Sutherland, Statutes and Statutory Construction (4th ed. (1973) § 51, p. 287.) Thus, viewing section 5127.6 with reference to related statutes sheds light on its meaning.

---

section 5127.5 states that the "wife's interest in the community property, including the earnings of her husband, is liable for the support of her children to whom the duty to support is owed."

[7]Civil Code section 196 provides in part: "The father and mother of a child have an equal responsibility to support and educate their child...."

Civil Code section 206 states in part: "It is the duty of the father, the mother, and the children of any person in need ... to maintain such person...."

Civil Code section 242 states in part: "Every individual shall support his or her spouse and child...."

Virtually all of the statutory provisions imposing familial support obligations are found in Civil Code sections 196 through 254. Those provisions dealing with support of children are found primarily in Civil Code sections 196 through 239. Further provisions dealing with enforcement procedures for the duty to support children are found in Civil Code sections 4700 through 4705, and 4807, part of the Family Law Act. None of these sections contain provisions creating an obligation on stepparents to support nonadopted stepchildren.

On the other hand, the sections dealing with spousal relations, particularly duties regarding community property, are found primarily in Civil Code sections 5100 through 5138. It is apparent that Civil Code section 5127.6 is not found among any statutes dealing with child support obligations; rather, it is located in the middle of the sections covering husband-wife relations. While this fact is not a conclusive indicator of the intended meaning of this ambiguous statute, it strongly suggests that Civil Code section 5127.6 was intended to deal with duties between husbands and wives and not between stepparents and non-adopted stepchildren.

Respondent suggests that the repeal of former Civil Code section 209, which established that a stepparent is not liable to support non-adopted stepchildren unless he or she is *in loco parentis*, is consistent with the creation of such liability in Civil Code section 5127.6. However, the repeal of Civil Code section 209 is equally as consistent with the removal of even the *in loco parentis* obligation. Had the Legislature wished to create an affirmative duty to replace that in Civil Code section 209, the logical and obvious step would have been to create a new Civil Code section 209, located within the other provisions governing child support. ■ Moreover, the general rule is that the repeal of a statute, even though declaratory of the common law, revives the common law as it was before the statute. (*Estate of Sloan* (1935) 7 Cal. App.2d 319 [152 P. 540]; 2A Sutherland, Statutes and Statutory Construction (4th ed. (1973) § 50.01, p. 268.) Finally, the courts will not presume that the repeal of a statute was "intended to overthrow long established principles of law unless that intention is made clear by express declaration or necessary implication." (*In re W. R. W* (1971) 17 Cal. App.3d 1029, 1036 [95 Cal.Rptr. 354].)

■ We next consider the legislative history surrounding the enactment of Civil Code section 5127.6. Again, the crucial issue is whether

the section corrects the deficiencies found in section 5127.5 by the *Camp* v. *Swoap* court. Thus, any reference in the legislative history to the *Camp* decision or the shortcomings of Civil Code section 5127.5 might be evidence of the Legislature's intent regarding Civil Code section 5127.6.

There are no such references. Assembly Bill No. 381, the bill of which section 5127.6 was a part, was introduced in January of 1979 and amended April 4, 1979, at which time it contained all of the relevant provisions of the final enactment. *Camp* v. *Swoap*, on the other hand, was not decided until July 1, 1979. Thus, although the statute was not passed until September 1979, the operative language was set forth prior to the *Camp* decision. Therefore, the Legislature did not have the benefit of the *Camp* decision when drafting Civil Code section 5127.6 and could not be expected to have intended to cure the defects *Camp* brought to light.

Nonetheless, review of the relevant legislative history might shed some light on what the intended meaning of Civil Code section 5127.6 was. One report by the Assembly Committee on Human Resources drafted prior to *Camp* is claimed by respondents to provide strong support for their interpretation of the statute. It states: "It is the intent of this provision to reduce the AFDC payment by assuming the availability of the stepparent's income. Under federal regulations, the State can do so only by making all stepparents legally responsible for their stepchildren." However, while this statement suggests an intent to assume the availability of stepparent income and evidences some awareness of federal law on the issue, it neither shows an intent to actually create a legal duty on the stepparent nor professes to have satisfied the federal requirement that the stepparent's legal obligation to support be equal to that of the natural parent's duty. Rather, the language of the report seems to reveal an intent to create exactly what was condemned in *Lewis* v. *Martin*: " . . . merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income on which the reduction is based." (397 U.S. 552, at p. 559 [25 L.Ed.2d at p. 567].)

Only one committee report was drafted after the *Camp* decision. While this report reflects the same legislative desire to create a device for reducing AFDC benefits, it clearly shows that the intended means for doing so was directed at parental and not stepparent obligation: "It is believed that this change in civil law will permit welfare departments

to presume that a parent (usually a mother) does have access to at least the community share of income." (Sen. Com. on Health & Welfare. Staff analysis of Assem. Bill No. 381.) The emphasis in this report is on the natural parent's community property interest, rather than the stepparent's obligation to nonadopted stepchildren.

Respondent suggests that the concerns expressed in various committee reports over whether Civil Code section 5127.6 would be a disincentive to marriage supports an interpretation of stepparent obligation. Such concerns are equally as supportive of merely an interspousal duty or even a parental duty. Knowing that one's spouse or the child of one's spouse from a previous relationship has legal access to the spouse's community property interest might be a disincentive to marriage for any would-be stepparent, in lieu of any direct obligation to the prospective stepchildren.

Lastly, it is significant that the Legislative Counsel's Digest, which accompanied the Bill, nowhere suggests that section 5127.6 creates a stepparent duty of support. In sum, while the legislative history of Civil Code section 5127.6 is vague, the weight of the evidence is far more supportive of an interpretation creating either an increased support obligation between a parent and his or her child or an interspousal obligation, than it is supportive of an obligation between stepparents and nonadopted stepchildren. None of the legislative history addresses the issue in the terms required by *Camp*: stepparent duty to support nonadopted stepchildren.

One noted scholar has grappled with interpreting Civil Code section 5127.6. After noting that California child support law is now "chaotic," Professor Reppy attempts to draw meaning from Civil Code section 5127.6. His interpretation of the statute concludes that it constitutes an extension of the natural or adoptive parent's child support liability to include "the parent's half interest in the nonparent spouse's earnings." (See, Reppy, *Debt Collection from Married Californians: Problems Caused by Transmutations, Single-Spouse Management and Invalid Marriage* (1981) 18 San Diego L.Rev. 143, 204-206.)

In light of the above we find that Civil Code section 5127.6 does not create a duty for stepparents to support nonadopted stepchildren. Having so concluded, it is unnecessary to address the second prong of our

inquiry, namely, whether the obligation created by California law satisfies the federal requirements.

The judgment is reversed.

Grodin, P. J., and Rouse, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 15, 1982.