*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-AA-630

DISTRICT OF COLUMBIA PUBLIC SCHOOLS, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

COLICCHIO PROCTOR, INTERVENOR.

On Petition for Review from an Order
of the Compensation Review Board
(CRB-194-12)

(Argued May 20, 2014                    Decided July 31, 2014)

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. Alikhan*, Deputy Solicitor General, were on the brief for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Eugene Dams*, Principal Deputy Attorney General, *Tonya Sapp*, General Counsel, and *Rhesha Lewis-Plummer*, Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Harold L. Levi*, with whom *Steven M. Zelinger*, was on the brief, for intervenor.

Before BLACKBURNE-RIGSBY and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*: District of Columbia Public Schools ("DCPS") seeks review of an order of the Compensation Review Board ("the Board") which upheld a common law treating physician preference in public-sector workers' compensation cases. DCPS contends that the Board erred as a matter of law in holding that the repeal of a statutory treating physician preference revived the common law rule, where the legislature's intent was to abolish the preference in public sector cases. We agree, and accordingly we reverse the Board's order and remand the case.

## FACTUAL BACKGROUND

On September 26, 1994, claimant Colicchio Proctor ("claimant") injured her right knee after a slip and fall while working as an employee of DCPS. On October 31, 1994, she filed for disability compensation under the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-623.01 *et seq.* (2012 Repl.), and began receiving temporary total disability workers' compensation benefits which commenced on the date of her injury.

Claimant sought medical treatment for her knee injury from Dr. John Delahay, who has continued to treat her since her fall. Dr. Delahay performed arthroscopic surgery, and after completing physical therapy, claimant returned to work in May 1995. She left thirteen months later, however, due to a recurrence of her knee injury, at which time her disability benefits were reinstated. In September 1998, adjustments were made to claimant's temporary disability payments to reflect that claimant had secured a part-time sedentary job. She was terminated from this employment sometime before November 1999.

Claimant suffered another fall on November 7, 2003, and Dr. Delahay observed in his reports that the injury resulting to her right knee from this fall was exacerbated by her original work-related injury. In August 2006, Dr. Delahay opined that claimant had sustained a "traumatic chondromalacia" and that she was "relatively asymptomatic on her right side until the fall 12 years ago and since that time has had ongoing and somewhat progressive problems with the right knee." In September 2006, Dr. Delahay further stated that, "I do believe a fall such as the one sustained by [claimant] can accentuate underlying disease and indeed accelerate its course," and that some of her current arthritis was attributable to the original fall. X-rays taken in December 2011 revealed that claimant had end-stage

osteoarthritis in both knees, and Dr. Delahay opined that the X-ray showed that her right knee was worse than her left.

On December 13, 2011, claimant saw Dr. Louis Levitt for an additional medical evaluation at DCPS's request. After reviewing claimant's medical records and conducting a physical examination, Dr. Levitt concluded that claimant had a degenerative injury that was symmetrical in both knees and attributable to age and chronic obesity. Dr. Levitt further opined that claimant's current knee arthritis was not causally related to the original work-related injury and had not been accelerated or enhanced by that injury.

On February 16, 2012, more than seventeen years after the date of the original injury, the Office of Risk Management notified claimant that it would stop paying her disability benefits on March 16, 2012. Claimant appealed the decision to DOES's Office of Hearings and Adjudication, and an evidentiary hearing was held on October 4, 2012. The administrative law judge ("ALJ") applied a common law rule giving preference to the treating physician's testimony (Dr. Delahay) over the testimony of other physicians, and reinstated claimant's temporary total disability benefits in a compensation order dated November 21, 2012.

DCPS appealed to the Board, which rejected DCPS's argument that the ALJ erred in applying the treating physician preference and affirmed the compensation order. The Board denied DCPS's motion for reconsideration, and DCPS filed a timely petition for review to this court.

## ANALYSIS

### I. Statutory Background

In our 2004 opinion *Kralick v. District of Columbia Dep't of Emp't Servs.*, 842 A.2d 705 (D.C. 2004), we held that treating physician preference applies to disability benefits cases brought by public employees under the CMPA. The preference, which hails from private-sector workers' compensation cases, provides that "the medical opinion of a treating physician is generally entitled to greater weight than the opinions of doctors who have been retained to examine a claimant solely for the purpose of litigation." *Id.* at 711. "Although a Hearing Officer remains free to reject the testimony of a treating physician, he cannot do so 'without explicitly addressing that testimony and explaining why it is being rejected.'" *Id.* (quoting *Lincoln Hockey, LLC v. District of Columbia Dep't of Emp't Servs.*, 831 A.2d 913, 919 (D.C. 2003)); *see also Olson v. District of*

*Columbia Dep't of Emp't Servs.*, 736 A.2d 1032, 1041 (D.C. 1999) ("[A] hearing examiner may discount a treating physician's opinion if the examiner sets forth specific and legitimate reasons for doing so.").

Following *Kralick*, the Council of the District of Columbia codified in December 2004 a treating physician preference for public sector cases brought under the CMPA. The Disability Compensation Effective Administrative Amendment Act of 2004, D.C. Law 15-290, amended the CMPA to provide that: "In all medical opinions used under this section, the diagnosis or medical opinion of the employee's treating physician shall be accorded great weight over other opinions, absent compelling reasons to the contrary." D.C. Code § 1-623.23 (a-2)(4) (2005). All parties to this appeal essentially agree that the amendment accorded greater deference to a treating physician's testimony than was provided by *Kralick*. In particular, the amendment required that the treating physician's testimony be given "great weight" instead of "greater weight," and the hearing examiner could discount the testimony only for "compelling reasons" instead of "specific and legitimate" ones.

Subsequently, in 2010, the Council repealed the amendment by striking altogether the above sentence which codified the preference. D.C. Council, Report

on Bill 18-731, the Fiscal Year 2011 Budget Support Act of 2010, Attachment C, at 19-20 (May 26, 2010). The Council did not substitute any other language for this provision.

## II. Principles of Statutory Construction

"The initial step in statutory interpretation is to 'first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning' while construing the words in their 'ordinary sense and with the meaning commonly attributed to them.'" *Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)). "Although the 'plain meaning' rule is certainly the first step in statutory interpretation, it is not always the last or the most illuminating step." *Peoples Drug Stores*, 470 A.2d at 754. "[E]ven where the words of a statute have a 'superficial clarity,' a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Id.* (citations omitted). In such situations, "[t]he court may appropriately look beyond plain meaning." *Dobyns*, 30 A.3d at 159.

Furthermore, legislative intent may indicate whether the repeal of a statutory provision has the effect of reviving or supplanting common law. Typically, "[i]n the case of the repeal of a statute . . . even though declaratory of the statute that is repealed, the repeal revives the common law as it was before the statute." 2B Sutherland Statutory Construction § 50:1 (7th ed. 2008); *accord Velez v. Tuma*, 821 N.W.2d 432, 436-37 (Mich. 2012) (repeal of statutory provision codifying common law did not abrogate common law rule); *State v. Buck*, 275 N.W.2d 194, 197 (Iowa 1979) ("It is well settled that: '. . . The legislature is presumed to know the common law before the statute was enacted, and so the repeal of a statute, even though declaratory of it, revives the common law as it was before the statute.'" (quoting 2A Sutherland § 50:01 (4th ed.))); *Wood v. Woods*, 184 Cal. Rptr. 471, 477 (Cal. Ct. App. 1982) (same); *Makin v. Mack*, 336 A.2d 230, 234 (Del. Ch. 1975) (same). This principle governs, however, only "[a]bsent an indication that a legislature intends a statute to supplant common law." 2B Sutherland § 50:1; *accord White v. State*, 717 S.W.2d 784, 787 (Ark. 1986) (common law repealed where it was legislature's "apparent" intent to do so when repealing statutory provision fashioned in part on common law).

It is a maxim of statutory construction that "[r]epeals by implication are not favored." *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1108 (D.C.

1997) (citation omitted). Accordingly, "no statute is to be construed as altering the rules of the common law, farther than its words plainly import." *Holiday v. United States*, 683 A.2d 61, 98 (D.C. 1996) (internal quotation marks omitted); *see, e.g.*, *Velez*, 821 N.W.2d at 436-37 ("[T]he Legislature should speak in no uncertain terms when it exercises its authority to modify the common law."); *Northern Indiana Pub. Serv. Co. v. Citizens Action Coal. of Indiana, Inc.*, 548 N.E.2d 153, 159 (Ind. 1989) ("It is well settled that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication." (internal quotation marks omitted)). Nevertheless, courts may "supply words to a statute . . . where necessary to give effect to a legislative intent clearly indicated by the statute's context or other parts." 2B Sutherland § 47:38.

### III.    Council's Intent in Repealing Treating Physician Preference

At oral argument, counsel for DCPS agreed that when considering only the specific language of the 2010 repeal, in the absence of any provision relating to supplanting the common law, the effect of the repeal would be to revive the *Kralick* common law rule. Notwithstanding, DCPS argued – and we agree – that a review of the legislative history reveals ambiguities which compel us to look

beyond the plain meaning of the statute. The legislative history manifests a clear and unmistakable intent on the part of the Council to accord equal weight to the testimonies of both treating and non-treating physicians in public-sector cases brought under the CMPA.

The most significant indication of the Council's intent lies in the language of the bill as originally introduced. Initially, the Council had considered replacing the amendment codifying the preference with an equal weight provision. Report on Bill 18-731, Attachment A, at 37. That provision would have modified the amendment to read: "In all medical opinions used under this section, the diagnosis or medical opinion of the employee's treating physician and the opinion of other physicians who would have examined the employee shall be given equal weight." *Id.* A report by the Council's Committee on Government Operations reveals that the Council decided against enacting this equal weight provision because it was concerned that the provision could be misinterpreted to preclude credibility determinations:

> Adding a provision that requires all evidence to be afforded equal weight, as proposed, could be interpreted to prevent a judicial or quasi-judicial body from assigning different values of credibility to difference pieces of evidence. Thus, the Committee recommends amending this provision to simply delete the current "great weight" provision.

D.C. Council, Report and Recommendation of the Committee on Government Operations and the Environment on the Fiscal Year 2011 Budget For Agencies Under Its Purview, at 144 (May 13, 2010) (emphasis omitted). This concern notwithstanding, the Committee never suggested that the purpose of the 2010 repeal should be altered. The Committee recognized that the clear purpose of the repeal was to "allow all medical evidence to be treated equally in resolving medical disputes," in contrast with "[c]urrent law [which] requires evidence from the patient's treating physician to be afforded great weight." *Id.* Thus, the legislative history demonstrates that the Council's intention in repealing the 2004 amendment was to eliminate the treating physician preference.

Claimant asserts that the Board has construed the 2010 statute as reviving the *Kralick* common law rule, and considerable deference should be given to the Board's construction. While the Board's "interpretation of . . . the statute which it administers is generally entitled to great deference from this court," it "is not binding upon this court if it conflicts with the plain meaning of the statute or its legislative history." *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1196 (D.C. 2008) (en banc) (internal alterations and quotation marks omitted). "The judiciary is the final authority on issues of statutory construction." *Id.* (internal alteration and quotation marks omitted). Because the Board's

construction of the 2010 repeal contradicts the Council's unmistakable intent to eliminate the treating physician preference, we hold that the Board's interpretation is erroneous as a matter of law.

For these reasons, the 2010 repeal eliminated the treating physician preference in public-sector cases brought under the CMPA. We therefore reverse the Board's order and remand for additional proceedings consistent with this opinion.

*So ordered.*