*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-1111

DAVID YOUNG,
PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES,
RESPONDENT,

and

INSTITUTE FOR PUBLIC-PRIVATE PARTNERSHIP
and
TRAVELERS INDEMNITY COMPANY,
INTERVENORS.

On Petition for Review of a Decision and Order of the District of Columbia
Department of Employment Services Compensation Review Board
(CRB No. 93-19)

(Argued October 1, 2020                                    Decided December 3, 2020)

*Benjamin T. Boscolo*, for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Principal Deputy Solicitor General, filed a statement in lieu of brief for respondent.

*Scott E. Snyder*, for intervenors.

Before GLICKMAN and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

GLICKMAN, *Associate Judge*: Petitioner David Young, who has been quadriplegic since a work-related accident in 2006, filed a disability claim with the Adjudication and Hearings Division (AHD) of the Department of Employment Services (DOES) for modification of his residence to enable him to use specialized physical therapy equipment recommended by his physician. Travelers Indemnity Company, the workers' compensation insurer of Mr. Young's employer, agreed to pay for the equipment and the necessary home modifications. Mr. Young and Travelers are at loggerheads, however, over the choice of contractor to do the home remodeling. After a hearing, an Administrative Law Judge (ALJ) ruled that the AHD is without jurisdiction under the District of Columbia Workers' Compensation Act of 1979[1] (WCA) to resolve the dispute over contractor selection because, the ALJ concluded, the dispute did not "pertain to the character and sufficiency of a medical aid." The Compensation Review Board (CRB) upheld that interpretation of the WCA. For the following reasons, we reverse and remand for a determination of Mr. Young's claim on its merits.

---

[1] D.C. Code § 32-1505 *et seq.* (2019 Repl.).

**I.**

On March 26, 2006, while working abroad for the Institute for Public-Private Partnership (IPPP), Mr. Young was in a car crash that left him with severe cervical spinal cord injuries. In 2016, Mr. Young's physician recommended that he use a rehabilitative machine manufactured by Hocoma AG called an "Erigo Pro" to improve his muscular, circulatory, and cardiovascular functioning. The Erigo Pro is a large robotic device designed, per its manufacturer, to enable the safe mobilization of bed-ridden patients "in order to counteract the negative effects of immobility and accelerate the recovery process with intensive sensorimotor stimulation." The device measures 89'' x 34'' x 95,'' weighs approximately 661 pounds, and requires an estimated 169 square feet of space in which to operate. Enlargement and other structural modifications of Mr. Young's residence, which is in Florida, are necessary to accommodate the Erigo Pro.

IPPP and Travelers do not dispute Mr. Young's need for the Erigo Pro, and Travelers agreed to pay the considerable cost of acquiring it and modifying Mr. Young's home to enable its installation there. There also appears to be no material dispute as to what structural modifications should be made. What is in dispute is which home improvement contractor should be selected to carry out the work. Mr.

Young objects to the contractor selected by Travelers, based on his dissatisfaction with the quality of its previous work on his home and flaws he perceives in its plans for the Erigo Pro-related renovations. Travelers, however, rejects the alternative contractor selected by Mr. Young because it declined to assure Travelers that its subcontractors would have workers' compensation coverage for their employees. Travelers's stated concern (which Mr. Young disputes) is that hiring an "uninsured" contractor to do the work could result in a violation of Florida law and subject Travelers to additional liabilities and costs.[2]

Thus, the contested issue before the ALJ was whether to issue a compensation order requiring Travelers to pay for the modification of Mr. Young's residence by his chosen contractor. The ALJ declined to resolve this issue on its merits, however. Saying "there is no provision [in the WCA] related to home modification to construe," and finding that the parties' contractors had proposed identical structural changes to accommodate the Erigo Pro, the ALJ concluded that the dispute over the choice of contractor "does not pertain to the character and sufficiency of a medical

---

[2] The CEO of the contractor selected by Travelers testified in the proceeding below that Travelers requires its contractors to have workers' compensation insurance and to require its subcontractors to have it as well.

aid" and was therefore "beyond this administrative court's purview." The ALJ therefore denied Mr. Young's claim for relief for lack of jurisdiction.

The CRB agreed with the ALJ's rationale and affirmed. Stating without further analysis that AHD's statutory "authority to hear and determine all questions in respect of any claim [does not] include *everything* a Claimant could possibly associate with his work-related injury," and finding no "statutory authority" explicitly supporting Mr. Young's position, the CRB ruled that the WCA does not authorize AHD to "decide a dispute related to the selection of a subcontractor with regard to a home renovation."

Mr. Young contends that the CRB's ruling is erroneous and does not flow rationally from a reasonable interpretation of the WCA. He argues that even though the WCA does not mention home renovations specifically, it provides that AHD (as the Mayor's agent) has "full power and authority to hear and determine all questions in respect of any claim,"[3] and that it must resolve this dispute because the proposed home modifications are "part and parcel" of his medical care.

---

[3] D.C. Code § 32-1520(a). "Under our Act, a 'claim' means nothing more than a simple request for compensation which triggers the process of claim adjudication." *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 531 A.2d 651, 659–60 (D.C. 1987).

**II.**

Under D.C. Code § 2-510(a)(3) (2016 Repl.), we will affirm the CRB's decision "unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law."[4]  This appeal presents a pure question of law: whether the WCA authorizes AHD, in adjudicating a claimant's request for a compensation order approving home modifications necessary to aid the employee's rehabilitation, to resolve a dispute over the contractor chosen by the employee to perform the modifications.  "We review this issue *de novo*, 'recognizing that this court is the final authority on issues of statutory construction.'"[5]

---

[4]  *Clark Constr. Grp. Inc. v. District of Columbia Dep't of Emp't Servs.*, 123 A.3d 199, 202 (D.C. 2015) (internal quotation marks omitted).

[5]  *Johnson v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 9, 10 (D.C. 2015) (quoting *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012)); *see also, e.g.*, *Wash. Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 683 A.2d 470, 472 (D.C. 1996) ("Where questions of law are concerned, this court reviews the agency's rulings de novo; we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain the final authority on issues of statutory construction."  (internal quotation marks omitted)).

Normally, in construing the WCA, if "the plain meaning of the statutory language is unambiguous," our "inquiry need go no further."[6] If there is ambiguity in the operative statutory language, we ordinarily will accord "great weight" to the CRB's considered interpretation, provided that it is reasonable and not inconsistent with the language and purpose of the WCA.[7] "However, the degree of deference to be accorded to such agency interpretation is a function of the process by which that interpretative ruling has been arrived at and the degree to which the agency's administrative experience and expertise have contributed to the process. For example, '[w]hen it appears that the agency (or, in this case, the [CRB]) did not conduct any analysis of the language, structure, or purpose of the statutory provision, it would be incongruous to accord substantial weight to [the] agency's determination.' . . . Likewise, 'if the agency's decision is based upon a material misconception of the law, this court will reject it.'"[8]

---

[6] *Clark*, 123 A.3d at 203 (internal quotation marks and footnote omitted).

[7] *E.g.*, *Johnson*, 111 A.3d at 11 (quoting *Fluellyn*, 54 A.3d at 1160); *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 862 A.2d 387, 391 (D.C. 2004).

[8] *Genstar Stone Prods. Co. v. District of Columbia Dep't of Emp't Servs.*, 777 A.2d 270, 273 (D.C. 2001) (quoting *Proctor v. District of Columbia Dep't of Emp't Servs.*, 737 A.2d 534, 538 (D.C. 1999), and *Jerome Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 182 (D.C. 1996)); *see also, e.g.*, *Wash. Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 789 A.2d 1261, 1264 (D.C. 2002) (reiterating that, to receive deference from this court, "agency

Finally, we "recognize that workers' compensation statutes are to be liberally construed for the benefit of the *employee*, and that, accordingly, ambiguous provisions are to be construed with reference to the statute's manifest purpose."[9]

### III.

The statutory provisions in question here are found in D.C. Code §§ 32-1507 ("Medical services, supplies, and insurance") and 32-1520 ("Procedure in respect of claims").

In pertinent part, § 32-1507(a) provides that:

> The employer shall furnish such medical, surgical, vocational rehabilitation services, including necessary travel expenses and other attendance or treatment, nurse and hospital service, medicine, crutches, false teeth or the repair thereof, eye glasses or the repair thereof, artificial

---

interpretations must reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support and the record must provide evidence that the agency considered the language, structure, or purpose of the statute when selecting an interpretation" (internal quotation marks and citations omitted)).

[9] *Clark*, 123 A.3d at 203 (emphasis in the original; internal punctuation and citations omitted).

or any prosthetic appliance for such period as the nature of the injury or the process of recovery may require.

Section 32-1507(b) adds that "[t]he Mayor . . . shall have the authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished,"[10] and that "[d]isputes . . . on the issue of necessity, character, or sufficiency of the medical care or service furnished . . . shall be resolved by the Mayor upon application for a hearing[.]"[11] Section 32-1520(a) underscores that "the Mayor shall have full power and authority to hear and determine all questions in respect of any [compensation] claim."[12]

The CRB endorsed the ALJ's conclusion that the dispute over Mr. Young's choice of contractor did not pertain to the "character" or "sufficiency" of medical aid within the meaning of § 32-1507. The only explanation they provided for this interpretation of the statute was that the WCA contains no provision expressly

---

[10] § 32-1507(b)(4).

[11] *Id.* at (b)(6)(D).

[12] The Mayor has delegated its authority under §§ 32-1507 and -1520 to the Department of Employment Services. *See Lee v. District of Columbia Dep't of Emp't Servs.*, 509 A.2d 100, 102 n.1 (D.C. 1986).

pertaining to home modifications, and that the modifications proposed by each party's contractor were identical.[13]

We agree with Mr. Young that this cursory explanation is unsatisfactory, and that the CRB has adopted an unreasonable interpretation of the WCA to which we owe no deference. The conclusion simply does not follow from the scant reasons given for it, and it is inconsistent with both the plain statutory language and the purpose and history of the provisions at issue.

There is no dispute that the proposed structural modification of Mr. Young's residence to accommodate the Erigo Pro device constitutes an essential component of what § 32-1507 refers to as the "medical care or service"—the "medical aid"—to be furnished to Mr. Young. Subsection (a) states the employer "shall furnish such medical . . . services, including . . . artificial and prosthetic appliance[s] for such period as the nature of the injury or the process of recovery may require," and Mr. Young requires the modification of his home to be able to use the Erigo Pro

---

[13] The CRB also declined to read § 32-1520(a) as expanding the scope of the hearing authority in this area beyond that set forth in § 32-1507, i.e., beyond disputes concerning the "necessity, character, or sufficiency" of the aid to be furnished. Our resolution of this petition for review renders it unnecessary to address the correctness of the CRB's interpretation of § 32-1520(a).

(certainly an "artificial appliance") to ameliorate his injuries and recover some of his functioning. That, of course, is why Travelers has agreed to pay for the modification.

That home modification is not mentioned specifically among the ancillary services listed in § 32-1507(a) does not mean it is excluded from the general category of medical "aid" or "services." The listing of some particular services that the employer shall furnish clearly is not meant to be exhaustive—as the use of the word "including" signifies.[14] Nor do needed ancillary services have to be medical in themselves to fall within the category of medical aid or services; this is shown by the inclusion of "necessary travel expenses" in § 32-1507(a) among the costs that the employer must cover. The purpose of the statute to ensure that injured employees receive the therapy they need, and the concomitant requirement that we liberally construe the statute for the employee's benefit to achieve that goal, compel the conclusion that needed home modifications are within the scope of § 32-1507.

---

[14] In statutes, as elsewhere, "[t]he participle *including* typically indicates a partial list[.]" *Include*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also, e.g.*, the definition of "include" in the AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3rd ed. 1992) ("include . . . more often implies an incomplete listing").

This conclusion is buttressed by precedent under similar statutes elsewhere. Notably, the Department of Labor's Benefits Review Board (BRB), which is the federal counterpart of the CRB,[15] has considered the interpretation of virtually identical provisions of the Longshore and Harbor Workers' Compensation Act (LHWCA).[16] The LHWCA was the precursor to the WCA, and we have recognized that interpretations of its provisions are helpful in construing our own statute.[17]

---

[15] Congress created the BRB to "issue decisions on appeals of worker's compensation claims arising under the Longshore and Harbor Worker's Compensation Act." *Benefits Review Board*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/brb/welcome https://perma.cc/ZM78-GWRJ. The BRB "reviews the decisions of administrative law judges in order to determine whether the findings are supported by substantial evidence and are in accordance with law." *Benefits Review Board: Mission Statement*, U.S. DEPARTMENT OF LABOR, https://www.dol.gov/agencies/brb/mission https://perma.cc/K9SG-UXJS.

[16] 33 U.S.C. § 901 *et seq.*

[17] *See Pannell-Pringle v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 209, 211–12 (D.C. 2002) ("Before 1980, persons employed in the District of Columbia were covered by workers' compensation under the Longshoremen's and Harbor Workers' Compensation Act. In 1980, however, the Council of the District of Columbia enacted the District of Columbia Workers' Compensation Act . . . , which borrowed heavily from the LHWCA.") (internal citations omitted); *see also Goba v. District of Columbia Dep't of Emp't Servs.*, 960 A.2d 591, 595 (D.C. 2008) (relying on federal court's construction of 33 USC § 928(a) to interpret the WCA's fee-shifting provision).

Section 32-1507 is based on 33 U.S.C. § 907, which similarly states that "[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require,"[18] and that "[t]he Secretary shall . . . have authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished."[19]  In *Dupre v. Cape Romain Contractors*, *Inc.*,  the BRB affirmed an ALJ's decision that modifications to the home of a paraplegic claimant "which were necessitated by his disability, i.e., ramps, widened doorways, handicapped-accessible plumbing fixtures, and other changes" constituted medical aid within the meaning of § 907.[20]  The BRB explained that:

> it would be unconscionable for a claimant to have to foot the bill for such basic necessities resulting from his work-related injury, and interpreting the medical benefits section of the Act to exclude these items from coverage would not promote the purposes of the Act . . . as they are

---

[18]  33 U.S.C. § 907(a).

[19]  33 U.S.C. § 907(b).

[20]  23 B.R.B.S. 86 (1989).

necessary for [claimant] to utilize the bathroom or even move about his home.[21]

Other jurisdictions have reasoned similarly when interpreting comparable language in their workers' compensation statutes. For example, in *R & T Constr. Co. v. Judge*, the Court of Appeals of Maryland held that modifications to the home of a paraplegic employee constituted medical treatment or services under that state's workers' compensation statute.[22] The Court of Appeals rejected the argument that home modifications were not "in the same class as . . . 'medicines, crutches, apparatus, artificial hands, arms, feet and legs and other prosthetic appliances,'"[23] citing the employee's inability to use his wheelchair without the renovations.[24]

---

[21] *Id.* The BRB relied on several prior decisions, including one holding that § 907 covered "the cost of a van with an automatic lift for a quadriplegic claimant . . . as a reasonable means to provide necessary transportation for medical purposes." *Id.* (citing *Day v. Ship Shape Maintenance Co.*, 16 B.R.B.S. 38 (1983)).

[22] 594 A.2d 99, 105–07 (Md. 1991) (noting also that the majority of courts addressing the issue had reached similar conclusions under other state workers' compensation statutes that did not specifically list home modifications among the medical aid to be made available to injured employees).

[23] *Id.* at 107.

[24] *Id. See also, e.g.*, *Quaker Oats v. Ciha*, 552 N.W.2d 143, 154–56 (Iowa 1996) (home modifications including "widened doorways, a ramp into the home, a special shower, an elevator, and other items necessitated by [employee's] wheelchair-bound status" were covered by workers' compensation statute); *Miller v. E.M.C. Ins. Cos.*, 610 N.W.2d 398, 411–12 (Neb. 2000) (employer was liable under workers' compensation statute for modifications that would make employee's

The legal conclusion is inescapable: home modifications can constitute "medical aid" under § 32-1507, and the ALJ in this case therefore had the statutory authority and responsibility under subsection (b) to resolve any dispute between Mr. Young and Travelers concerning the "necessity, character, or sufficiency" of the home modification he sought to enable him to benefit from the Erigo Pro device. We so hold; we see no need to remand this issue to the CRB for further exegesis of the statute.[25]

---

home handicap-accessible); *Squeo v. Comfort Control Corp.*, 494 A.2d 313, 318–23 (N.J. 1985) (ordering employer to pay for wheelchair-bound employee's accessible apartment, despite absence of statutory language addressing home modifications); *Peace River Elec. Corp. v. Choate*, 417 So.2d 831, 832 (Fla. Dist. Ct. App. 1982) (upholding award of wheelchair accessible modular home to paraplegic employee under workers' compensation act); *Zephyr, Inc. v. Indus. Comm'n*, 576 N.E.2d 1, 6 (Ill. App. Ct. 1991) (holding that "despite the lack of explicit statutory language . . . referring to home modifications, a fair reading of the statute does not preclude such compensation, nor is the result contrary to the statute's general purpose of fully compensating employees for work-related injuries."); *Hall v. Fru Con Const. Corp.*, 46 S.W.3d 30, 34 (Mo. Ct. App. 2001) ("Given that wheelchairs fall under the [workers' compensation] statute, it would logically follow that modifications to employee's home should be covered under the act to allow him to use his wheelchair."); *Rieger v. Workmen's Comp. Appeal Bd.*, 521 A.2d 84, 86 (Pa. Commw. Ct. 1987) (remodeling of employee's home so that he could utilize his wheelchair was covered by workers' compensation act).

[25] Often, because "we acknowledge the CRB's expertise and . . . responsibility for administering the Workers' Compensation Act," we remand so that the agency can make a second attempt to "supply a reasoned analysis." *Hensley v. District of Columbia Dep't of Emp't Servs.*, 49 A.3d 1195, 1205 (D.C. 2012) (internal quotation marks and citations omitted). Remand is not warranted, however, when this court has already articulated "the only correct interpretation" of the statute as a matter of law. *Reyes v. District of Columbia Dep't of Emp't Servs.*, 150 A.3d 1277, 1280

The remaining question is whether the dispute over the choice of contractor is one that concerns the "character" or "sufficiency" of Mr. Young's requested home modification. (Its "necessity" is conceded and hence is not in dispute.) The terms "character" and "sufficiency" are words of broad scope. "Character" in this context refers to "[t]he combination of qualities or features that distinguishes one . . . thing from another."[26] "Sufficiency" is essentially a synonym for "adequacy," i.e., what would be adequate to fulfilling "the needs or requirements" of a situation.[27] Contrary to the apparent view of the ALJ and the CRB, the mere fact that each party's preferred contractor proposes to perform the *same* structural modification does not mean there is no "character" or "sufficiency" issue raised by the choice of contractor. The dispute is over the suitability and qualifications of the contractor engaged to do

---

(D.C. 2016). *See also District of Columbia Pub. Schs. v. District of Columbia Dep't of Emp't Servs.*, 95 A.3d 1284, 1289 (D.C. 2014) (remand on the merits alone where the CRB's statutory interpretation was "erroneous as a matter of law"); *Apartment and Office Bldg. Ass'n of Metro. Wash. v. Pub. Serv. Comm'n of the District of Columbia*, 129 A.3d 925, 930 (D.C. 2016) ("remand is not required in cases where the agency would doubtless reach the same result . . . or [where] it is clear what the agency's decision has to be.") (internal quotation marks and citations omitted). Because home modifications can constitute medical aid under these circumstances, the fact that the WCA fails to expressly mention them does not create any real ambiguity deserving of CRB analysis.

[26] *Character*, AMERICAN HERITAGE DICTIONARY, *supra* note 14.

[27] *Id.* (definitions of "suffice" and its adjectival and noun variants).

the job—in other words, *how* the proffered contractor would carry out the plans, whether the contractor is capable, whether it would do so adequately so as to fulfill the parties' legitimate needs and requirements. Such a dispute is integral to both the "character" and the "sufficiency" of the home modification for which Mr. Young seeks authorization.[28]

Accordingly, we hold that the ALJ and the CRB erred as a matter of law in ruling that the AHD lacked authority under the WCA to resolve Mr. Young's dispute with Travelers over the selection of the contractor to carry out the structural modification of his home. We reverse and remand for a hearing to be held to resolve that dispute. In view of the length of time this dispute has been pending, we trust that a hearing will be held expeditiously on remand and resolution of the dispute will not be delayed.

*So ordered.*

---

[28] *Cf. Potter v. Elec. Boat Corp.*, 41 B.R.B.S. 69 (2007) (holding that a dispute between claimants and employer regarding the choice of a mail-order provider for prescription medication "concern[s] the character and sufficiency of any medical care furnished.") (internal quotation marks omitted); *Jones v. Huntington Ingalls, Inc.*, 51 B.R.B.S. 29 (2017) (holding that the choice of an audiologist, who is not a physician under the LHWCA, falls within the "character and sufficiency of a medical service.") (internal quotation marks omitted).